## CHARLES T. DORRANCE *et al. vs.* W. MAXWELL GREENE *et al.*

### JULY 5, 1918.

PRESENT: Parkhurst, C. J., Sweetland, Vincent, and Baker, JJ.

*(1)  Wills.  Trusts.  Time.  "Heirs at Law."*

Testamentary provision "From and after the decease of my said daughter should she leave a child or children, the said trustees shall appropriate so much of the income of the said trust funds as may be necessary for the support of such child or children until the youngest of them shall attain the age of twenty-one years or otherwise become of age—at which time they shall terminate their said trust by conveying to the child or children of my said daughter their heirs and assigns in equal shares all the estate real and personal then holden by them in trust.

But if my said daughter shall decease without leaving any child or children living at the time of her decease, I then direct that the said trustees shall thereafter pay to my wife for her own use if she has remained unmarried the annual sum of $500 so long as she remains unmarried. And shall also immediately thereafter pay the following sums to the persons hereafter named; (here followed a list of 17 bequests); they shall also pay to some suitable person the sum of $2,000 as trustee for the sole use and benefit of my sister B, so that she shall receive the income thereof during her life and so much of the principal from time to time as may be necessary for her support with the right of disposing of the principal or what may remain of it at her decease.

"They shall also pay to each of my nieces the annual sum of $30 so long as they respectively remain unmarried and also to my nephew the annual sum of $30 for the term of ten years. And all the rest and residue of the said trust funds remaining after the payment of the said sums and reserving a sufficiency for the payment of the annuities provided for in this will they shall distribute to and among my heirs at law, in the proportions in which they would severally be entitled under the statute for the distribution of intestate estates. And whenever the payment of the said annuities shall cease, so much of my said estate, as may have been reserved for their payment shall be then distributed in like manner."

All of the legatees of the pecuniary legacies and the testator's sister B, survived testator, but predeceased his daughter, the sister B. dying without attempting to exercise the power of disposition over the fund.

*Held,* that under the well established rule of construction the word "heirs" is held to refer to the living person or persons holding that relation at the time of the testator's death in the absence of an intention to the contrary clearly evidenced in the will.

*Held,* further that the provision for the annual payment to the wife from the residue of the trust estate which was to come into effect after the daughter's death, only if the wife had remained unmarried and was to cease at once on her remarriage, when considered in connection with the original bequest to her "in lieu of dower or other interest in my real or personal estate"

evinced a clear intention that the widow was not to share in the distribution of the "rest and residue of the trust funds remaining after the payment of the" pecuniary legacies "and reserving a sufficiency for the payment of the annuities" of which the widow's was one if she did not remarry.

*Held*, further, that with the death of his daughter without leaving a living child, and with his wife excluded from sharing in the distribution of the residue, both in mind, testator in providing as to this residue that the trustees "distribute" it "to and *among* my heirs at law in the proportions in which they would *severally* be entitled" was considering the death of his daughter, and therefore the "heirs at law" were to be determined at the date of the death of the daughter.

*Held*, further that the successive distributions of portions of the fund on the termination of the annuities would not necessitate the ascertainment of a new group of heirs as the heirs would once be determined as of the date of the death of the daughter and their right to a share of the fund retained to support the annuities would vest in ownership on the daughter's death, but not in possession until the annuities were at an end.

*Kenyon, Petitioner*, 17 R. I. 149, distinguished.

(*2*)   *Personal Legacies.*

*Held*, further, that in the case of the seventeen pecuniary legacies the intent being apparent to benefit personally each named legatee should he survive to take the gift they were contingent and nontransmissible and failed because of the decease of the legatees before the death of the life tenant.

(*3*)   *Disposition by Will of Contingent Interests.*

*Held*, further, that as the power to dispose by will of "contingent, executory or other future interests" first appeared in the statutes in 1896, such statute (now Gen. Laws, 1909, cap. 254, § 2) was not applicable.

*Held*, further, that the bequest in trust for the use of B. and the seventeen pecuniary legacies did not fall into the residue and were not disposed of by the will, but devolved as intestate estate of deceased, and the next of kin of testator at his death would take the property in accordance with the statute of distributions then in force.

(*4*)   *Wills.   Residue.   Lapsed Legacies.*

To entitle a residuary legatee to the benefit of a lapsed or void legacy he must be a legatee of the residue generally and not partially so.

(*5*)   *Wills.   Trusts.   Power to sell.*

Where a trustee is directed to distribute the trust property to and among different persons, and cannot make the division or distribution otherwise, a power to sell enough of the property to equalize its division is implied.

BILL IN EQUITY for construction of will.   Certified under Gen. Laws, R. I., 1909, cap. 289, § 35.

BAKER, J.   This cause is a suit in equity brought by the complainants in their capacity as trustees for the time being

under the will of Samuel Larned, late of Providence, for instructions relating to the construction of said will. The complainants are also interested in the questions raised in their capacities as executors of the will of Katharine Celia (Larned) Greene, the testator's daughter, and as trustees under certain clauses of her will, and the complainant W. Maxwell Greene is also interested as administrator of the estate of Celia (Larned) Greene, the testator's widow, who remarried subsequent to his decease. Accordingly, in these capacities they have, with numerous other parties, been joined as defendants.

The case, being ready for hearing for final decree, has been certified to this court for final determination under General Laws (1909), Chapter 289, Section 35, upon bill, answers and proof, the bill having been taken as confessed against such parties as failed to answer.

The important facts disclosed by the evidence may be thus summarized. Samuel Larned died in December, 1846, leaving him surviving his widow, Celia Greene Larned, and a daughter, Katharine Celia Larned. He was son of William Larned and had sixteen (or perhaps eighteen) brothers and sisters, whose numerous descendants, so far as known, are among the parties respondent.

His will, dated November 28, 1846, about a month before his death, was admitted to probate in the Municipal Court of the city of Providence on January 26, 1847. His first provision was for his wife to whom he gave $12,000 outright, "in lieu of her Dower or other interest in my Real or Personal Estate." He also gave her two gifts not of a pecuniary nature. He then disposed of his household furnishings, made numerous small pecuniary gifts to relatives, friends and servants, provided for several small annuities for relatives and appointed his wife guardian of his daughter.

The rest and remainder of his estate both real and personal he directed to be sold and the proceeds to be paid over to three trustees to whom he gave and bequeathed said proceeds in trust.

The trustees were given power to invest in Rhode Island real estate, real estate mortgages and bank stock and to change investments from time to time in their discretion. They were directed to make payment from the trust funds (1) of the annuities thereinbefore bequeathed; (2) of various annual sums for the testator's daughter, Katharine Celia Larned, the amount thereof being gradually increased for a certain period until it reached a maximum of $1,200 each year, said amount until her marriage to be paid annually to her guardian during her minority and to her upon reaching her majority; (3) to the Bishop of the Diocese of Rhode Island for religious purposes; all surplus income not required for the foregoing payments until an aggregate sum of $4,050 had been so paid; (4) thereafter to invest any surplus income for the purposes of the trust; and (5) to pay to the testator's said daughter from and after her marriage during her life the whole of the income of the trust fund remaining after the foregoing payments.

Then appear the provisions of the will which have given rise to the questions now before the court, as follows:

"And from and after the decease of my said daughter should she leave a child or children, the said trustees shall appropriate so much of the income of the said trust funds as may be necessary for the support of such child or children until the youngest of them shall attain the age of twenty-one years, or otherwise become of age—at which time they shall terminate their said trust by conveying to the child or children of my said daughter their heirs and assigns in equal shares all the estate real and personal then holden by them in trust.

"But if my said daughter shall decease without leaving any child or children living at the time of her decease, I then direct that the said trustees shall thereafter pay to my wife for her own use, if she has remained unmarried the annual sum of five hundred dollars so long as she remains unmarried —And shall also immediately thereafter pay the following sums to the persons hereafter named that is to say—

My mother Mrs. Sarah Larned two hundred dollars—

My brother William G. Larned one hundred dollars—

My brother George Larned one thousand dollars

My sister Sarah S. Larned two hundred dollars

My sisters Laura S. Hallett and Abby S. Brown two hundred dollars each—

My nephew William Larned two hundred dollars—

My nephew Russell M. Larned five hundred dollars

My nephew Edwin C. Larned one thousand dollars—

My nephew Charles H. Larned or L'arnard fifty dollars

My nephew William Henry Larned five hundred dollars—

My nieces Elizabeth H. Coburn and Sarah Osgood each fifty dollars—

My nephew Henry L. Hallett two hundred dollars—

My niece Jane H. Sayles fifty dollars

My brother in law Benjamin F. Hallett fifty dollars

My brother in law William Brown fifty dollars—

"They shall also pay to some suitable person the sum of two thousand dollars as trustee for the sole use and benefit of my sister Sophia L. Clifford so that she shall receive the income thereof during her life, and so much of the principal from time to time as may be necessary for her support, with the right of disposing of the principal or what may remain of it at her decease.

"They shall also pay to each of my nieces Lucinda M. Larned, Mary Letitia Larned, Ellen G. Larned and Anne M. Larned the annual sum of thirty dollars so long as they respectively remain unmarried—and also to my nephew Samuel Larned the annual sum of thirty dollars for the term of ten years—

"And all the rest and residue of the said trust funds, remaining after the payment of the said sums, and reserving a sufficiency for the payment of the annuities provided for in this my will, they shall distribute to and among my heirs at law, in the proportions in which they would severally be entitled under the Statute for the distribution of intestate estates.

"And whenever the payment of the said annuities shall cease, so much of my said estate, as may have been reserved for their payment shall be then distributed in like manner."

The testator was survived by his wife, Celia Greene Larned, and his only child, Katharine Celia Larned, no other person at the date of his decease holding the capacity of his heir at law or next of kin. The testator's widow subsequently married Richard W. Greene, who predeceased her, and she died intestate in 1887, leaving her daughter Katharine Celia as her sole heir at law and next of kin. Said Katharine Celia Larned married the defendant, W. Maxwell Greene, in 1872, and died June 29, 1917, testate and without ever having had any issue. In her will she directed that all property of hers derived from the testator be kept separate and disposed of it in part for the benefit of certain charities and in part for the benefit of various members of the Larned family, including many of the parties to this suit.

All of the persons, including the legatees of the said seventeen pecuniary legacies and said Sophia L. Clifford, for whom special provision was made by the testator in case his daughter Katharine should decease without leaving living children, survived the testator, but predeceased said Katharine, Sophia L. Clifford dying intestate and without ever having attempted to exercise the power of disposing of the fund which would have been available for her were she now living.

The various gifts made by said will prior to the creation of the trusts were paid by the executors, the persons to whom were bequeathed annuities upon the death of the testator survived the testator and predeceased his daughter and said annuities were paid in full, the payments required to be made by the trustees to the Bishop of the Diocese of Rhode Island were made and the other provisions and directions of the will have been fully carried out except those relating to the payments and distribution to be made after the decease of said Katharine Celia (Larned) Greene, leaving no living child or children.

The trust estate consisting principally of personal property is now distributable.

The complainants seek instructions with respect to four questions, as follows: 1. Whether or not the seventeen pecuniary legacies bequeathed in and by said will in case the said Katharine Celia (Larned) Greene deceased without leaving any child or children living at the time of her decease have by reason of the decease of the legatees during the lifetime of the said Katharine lapsed; 2. Whether the legacy in trust for the use and benefit of Sophia L. Clifford bequeathed in and by said will in case the said Katharine Celia (Larned) Greene deceased without leaving any child or children living at her decease and the said seventeen pecuniary legacies, if they shall be deemed to have lapsed, have fallen into the residue of said trust estate; and, if they have not fallen into said residue, what disposition should be made of them; 3. Whether the phrase "heirs-at-law" of the said Samuel Larned in the provision in said will for the distribution of the trust estate in case the said Katharine Celia (Larned) Greene deceased without leaving any child or children living at the time of her decease has reference to the persons holding said capacity at the date of the death of the said Samuel Larned or to the persons who would have held said capacity had the said Samuel Larned deceased immediately after the death of the said Katharine on the 29th day of June, 1917; and 4. Whether or not, if the residue of said trust estate is distributable among two or more persons at the present time, the complainants, as such trustees have for the purpose of making distribution of the same, power to sell real estate not capable of being partitioned in kind and power to sell such securities as remain after their holdings as such trustees in each security, so held by them, have so far as possible been distributed in kind in equal portions among the persons entitled to said residue.

Question 3 is undoubtedly the most important one in the present case and, therefore, it has been given the prominent position in the discussion by all of the parties in interest.

The executors of the will of Katharine Celia Greene, the administrator of the estate of Celia (Larned) Greene, (who is also one of said executors) and one other respondent claim that the words "heirs at law" as used in the will of Samuel Larned relative to the distribution of the rest and residue of his trust estate refer to persons having that capacity at the date of his decease in 1846. All the other respondents, who have appeared by counsel, claim that the words refer to persons having that capacity at the date of his daughter's decease in 1917.

Broadly speaking the controversy is between the representatives of the deceased daughter of the testator and the descendants of the testator's brothers and sisters.

Under the well established rules of construction the word "heirs" is held to refer to the living person or persons holding that relation at the time of the testator's death in the absence of an intention to the contrary clearly evidenced in the will itself. The question presented, therefore, is, Does the will itself clearly reveal such contrary intention? To satisfactorily answer this inquiry it is desirable to consider the situation and circumstances as they are disclosed to us, in which the testator executed his will within a month of his death. At that time his infant daughter was not quite a year old. In case she survived him, she would be his sole heir, speaking with technical strictness, while she and her mother would be the only persons, in the event of his decease intestate, entitled to share in his estate under the statute of distributions.

We think it may be assumed that he knew this. His other family relatives then living were his mother, brothers and sisters, and nephews and nieces. There is nothing in the will or otherwise to suggest that he then expected to have other children. His wife was a young woman, at the time not much more than half his age, and the will itself contains evidence that he deemed her marrying again after his death as not an improbable event. It is reasonably clear that the early death of his daughter was in his mind as a possibility,

if not as a probability, the evidence of which is the giving upon her decease a pecuniary legacy to his mother. The testator was fifty-eight years of age when his will was executed. Exhibit B, Table of descendants of William Larned, Table I, attached to the bill of complaint shows that he was the third child born of his mother. It is reasonable to infer that when the will was made she was upwards of eighty years old with of necessity an expectation of life of very few years. The amount of property disposed of by the will is not definitely shown, but it seems fairly apparent that it was not a very large estate even for that period. Katharine Celia (Larned) Greene in her will attempts to dispose of the trust fund as a fund separate and apart from her estate derived from other sources. She gives from it in the form of specific legacies in all sixty-three thousand dollars and in addition there is a residuary clause in favor of a person to whom she had given from this fund a pecuniary legacy as large as that given to any other person.

This affords some indication of its present condition and probably it is considerably larger now than originally, inasmuch as apart from any possible increase by judicious management by the terms of the will the surplus income in excess of the provision for the support of his daughter before her marriage and the payment of a few small annuities, after the bequest to the Diocesan Convention was paid, was added to the principal until the daughter's marriage in 1872.

In these circumstances the testator made his will. He first gave to his wife $12,000 "*in lieu of dower or other interest in my real or personal estate;*" then he created a trust estate and provided that part of the income thereof should be used for the benefit of his daughter, and all of it after marriage during her life, and in the event that she leave children surviving her provided for their support from the income until the youngest of them attained the age of twenty-one years and then terminated the trust by giving the entire trust fund to such children. But if the daughter died without leaving any living child, which has happened, he provided for the

payment annually to his wife of five hundred dollars "if she has remained *unmarried*," and "*so long as she remains unmarried*," provided also for the payment of seventeen pecuniary legacies amounting in all to $4,600 and for a few small annuities, and then directed that "All the rest and residue of the said trust funds, remaining after the payment of said sums, and reserving a sufficiency for the payment of the annuities provided for in this my will, they shall *distribute* to and *among* my heirs at law, in the proportions in which they would *severally* be entitled under the statutes for the distribution of intestate estates." In view of these provisions did the testator intend in the event that his daughter should die childless that his widow, if she survived her, whether she remained unmarried or not, should receive the entire residue of the trust estate, or do these provisions indicate a clear intent to the contrary? In *Welch* v. *Howard*, 227 Mass. 242, a testator gave all the rest and residue of his property and estate to trustees with directions to dispose of the net income "so long as my said wife shall live and remain my widow, or either of my four children hereinafter named shall live, as follows" namely: after paying stated amounts annually to a brother and a nephew during their respective lives, to divide "the residue of said net income" among his said wife and his four children, "so long as my said wife shall live and remain my widow and all my said children shall live, equally, share and share alike." There are further provisions first, that when his wife shall die or be married, her share of said income is to be divided among his said children, or the survivors of them, letting in the issue of a deceased child by right of representation, and second, that if a child die leaving no issue surviving, his share of the income is to be paid "to my said wife, if living and unmarried" and the survivors of said children and the issue of a deceased child by representation; and "Upon the decease or marriage of my said wife and the decease of the last survivor of my said four children, my trustees shall divide and distribute all said trust property

and estate among my heirs-at-law, according to the statutes which shall then be in force in said Commonwealth, regulating the distribution of intestate estates" adding a clause saving the rights of said brother and nephew as annuitants. The court stated the question presented to be whether the heirs were to be taken as of the death of the testator in 1871 or as of the death of the survivor of the life tenants in 1916. A second question was in the event that heirs at the death of the testator were meant, whether they were to be ascertained by the statutes then in force or by the statutes in force in 1916. The court held that the words "statutes which shall then be in force" clearly indicated that the heirs were to be determined as of the death of the surviving life tenant, but added "If such interpretation be not required by the construction of the precise language of this will . . . ample and plain reason therefor arises from the fact that the expressed intent that the interest of the widow in the estate should determine absolutely on remarriage would be defeated if the remainder was construed to be vested in the heirs at law at the death of the testator or in the heirs at law of the testator at the death of the testator as determined by the statute in force in 1916 . . . The provision relating to the disposition of the income upon the death or remarriage of the wife discloses a clear intention to exclude the widow from any interest in principal or income on the happening of either event."

In the present case the provision for the annual payment to his wife of five hundred dollars from the rest and residue of the trust estate which was to come into effect after the daughter's death only if the wife had remained unmarried, and was to at once cease on her remarriage, when considered in connection with the original bequest to her as being "in lieu of her dower or other interest in my real or personal estate" evinces, we think, a clear intention that she is not to share in the distribution of "the rest and residue of the trust funds remaining after the payment of the" pecuniary legacies already mentioned "and reserving a sufficiency

for the payment of the annuities" of which hers was one if she did not remarry.

And if the testator intended to exclude his wife as a distributee of his trust estate, it seems obvious that he did not mean in directing the distribution to and among his heirs at law that the law was to take its course, as is stated in a number of the cases cited in the brief of the executors of the will of Katharine Celia (Larned) Greene.

With this situation in mind, namely, the death of his daughter without leaving a living child, and his wife excluded from sharing in the distribution of the residue of the trust estate, it seems reasonably plain that the testator in providing as to this residue that the trustees "*distribute*" it "to and *among* my heirs at law in the proportions in which they would *severally* be entitled" is directing his mind to the death of his daughter at some time in the future, near or remote as the case might be, and to such distribution among those who would then be his heirs, his mother, if the occasion be not far away, his brothers and sisters, and the descendants of those who may have died.  Construing the will thus the "heirs at law" are to be determined at the date of the death of the daughter.

The giving of the pecuniary legacies to some of the persons who would in all probability be distributees of the fund, if worthy of note, will perhaps be sufficiently explained if they are regarded simply as intended as personal gifts and tokens of personal regard.

It is not so easy to understand why he should direct the payment of two thousand dollars "to some suitable person" in trust for the sole use and benefit of his sister Sophia L. Clifford when she would also be a distributee of the rest of the trust fund.    It is at least conceivable that there was a reason satisfactory to the testator for the provision without its being inconsistent in any way with making her a beneficiary in her own right otherwise.  The successive distributions of portions of the fund on the termination of the annuities would not necessitate the ascertainment of a new group of

heirs as the heirs would once be determined as of the date of the death of the daughter. Their right to a share of the fund retained to support the annuities would vest in ownership on the daughter's death but not in possession until the annuities were at an end.

This case is readily distinguished from *Kenyon, Petitioner,* 17 R. I. 149, as the court in that case largely rests its decision on the use of the words "I give and bequeath" in the Kenyon will as importing "a benefit in point of right, to take effect upon the decease of the testator and the proof of his will." Those words are lacking in the present case. Comment on the several Rhode Island cases in which has been found clear evidence of an intent to give the word heirs a meaning different from its strict technical sense does not seem necessary, as they have been considered somewhat recently in the case of *Taber* v. *Talcott,* 40 R. I. 338.

The statute for the distribution of the personal estate of intestates was the same in 1846 as in 1917. After a specified part thereof is given to the widow, the statute provides that "the residue shall be distributed amongst the heirs of the intestate, in the same manner real estates descend and pass." In other words the same persons, who as heirs take real estate, take "the residue" of the personal estate as *persona designata. De Beauvoir* v. *De Beauvoir,* 3 H. L. Cas. 524, 550. In deciding that the widow is excluded from sharing in the distribution of the residue of the trust fund we find that the testator in using the words "heirs at law" in like manner intended to designate the persons, who at the death of his daughter childless would in strictness then be his heirs.

As to the seventeen pecuniary legacies, all the legatees survived the testator but died in the lifetime of his daughter. It appears that some of them died more than fifty years ago, that many of them died testate, and that, if these legacies were held to be transmissible, it would be difficult, if not impossible, at the present time to ascertain into how many parts they would be split up, and in whom they are now vested. While such a result would be full of difficulty, it

would, however, be unavoidable, if under the will the intention to impart transmissibility to them is clearly apparent. We are of the opinion, however, that each legacy was given for the benefit solely of the person named. They are payable only in case his daughter died without leaving children surviving her, and then the trustees are directed to "immediately thereafter pay the following sums to the persons hereafter named." Thirteen of the legacies are sufficiently small as to suggest that the gift in each case was simply a personal remembrance, some of those thirteen are so small as to make this positively clear, for example, the five gifts of fifty dollars each, and inasmuch as they are all grouped together, it is not unreasonable to infer that all the gifts thus grouped should be regarded as purely personal. Some of them were made to brothers and sisters, who might be regarded as the heads of different branches of the Larned family, and at the same time gifts were specifically made to descendants of such heads of families. There are no words of limitation annexed to any of these legacies, as might be expected, if the testator intended them to be transmissible. We think the only intention clearly apparent is the intention to benefit personally each named legatee, should he or she survive to take the gift. And if it was necessary in the case of each legatee for him to survive the life tenant in order for the gift to him to be effective, then as his own existence at some particular future time was to determine whether any interest was to take effect in him, the interest was contingent and nontransmissible. *Brown* v. *Williams*, 5 R. I. 309, 316; *Tingley* v. *Harris*, 20 R. I. 517, 519; *In re* Watson's Trusts L. R. 10 Eq. 36; *Strode* v. *McCormick*, 158 Ill. 142. While, therefore, these seventeen legacies have not in strictness "lapsed," nevertheless, as already indicated, in reply to question 1, we decide that they were nontransmissible and have failed because of the decease of the legatees before the death of the life tenant. The power to dispose by will of "contingent, executory or other future interests" given by Section 2 of Chapter 254 of the General Laws of 1909,

first appeared in our statutes in 1896 and, of course, this statute is not applicable in the present case.

Replying to question 2 we are of opinion that the bequest in trust for the use and benefit of Sophia L. Clifford and the seventeen pecuniary legacies did not fall into the residue of the estate, that they are not disposed of by the will, but devolve as intestate estate of Samuel Larned. *Peckham* v. *Newton*, 15 R. I. 321, is cited in support of the claim that they have fallen into the residue, when the court on page 324 says, "It is, however, well settled that lapsed and void specific or pecuniary legacies fall into the residue, in the absence of any indication to the contrary." The residuary clause of the will before us is, "And all the rest and residue of said trust funds, *remaining after the payment of said sums, and reserving a sufficiency for the payment of the annuities provided for in this my will*, they shall distribute to and among my heirs at law." The "intention to the contrary" is found in the exclusion of the pecuniary legacies and the bequest in trust for Mrs. Clifford from the rest and residue which is to be distributed. In *Davis* v. *Davis*, 62 Ohio St. 411, it appears that the testator directed the creation of a fund, from which he made some charitable bequests and then provided that "the balance be divided between the children living at my death of the hereinafter named brothers and sisters of my late wife and myself, viz.:". The charitable bequests were held to be void and the question was as to what became of them.

It was held that the void legacies did not fall into the "balance" above-mentioned but passed as undisposed of property. The court says on page 414, "The 'balance' that is given to the so-called residuary legatees is not the general residuum of all of the testator's estate, but only what remained of a particular fund derived from specified sources, after deducting therefrom the amount of the charitable legacies and certain other charges upon it. The gift of that balance necessarily excludes from the gift everything that the will provides shall be deducted from the

fund in order to arrive at the balance." On page 416, it says, "In *King* v. *Woodhull*, 3 Edw. Ch. 79, 82 it laid down that 'to entitle a residuary legatee to the benefit of a lapsed or void bequest he must be a legatee of the residue generally, and not partially so; for, when it is manifest from the (4) express words of the will that a gift of the residue is confined to the residue of a particular fund or description of property, or to some certain residuum, he will be restricted to what is thus particularly given, since the legatee cannot take more than is fairly within the scope of the gift.'" See also *Power* v. *Hayne*, L. R. 8 Eq. 262; *Beekman* v. *Bonsor*, 23 N. Y. 298; *Kerr* v. *Dougherty*, 79 N. Y. 327, 347. In this case the next of kin of the testator at his death take the property devolving as intestate estate in accordance with the statute of distributions then in force. *Voorhees* v. *Singer*, 73 N. J. Eq. 532, 534. See also Section 7 of the Act in relation to wills of real and personal estate in Public Laws of Rhode Island, 1844, which section remained in effect until 1896.

We are of opinion that question 4 should be answered in the affirmative. Whether or not the power "to change investments from time to time as they may think necessary or expedient" has continued since the arrival of the time for distribution, it is not necessary to decide, inasmuch as the (5) power to sell enough of the trust property to equalize its division is implied, when the trustee is directed to distribute it to and among different persons, and cannot make the division or distribution otherwise. *Ames* v. *Ames*, 15 R. I. 12; *National Bank* v. *Smith*, 17 R. I. 244; *Pearce* v. *Rickard*, 18 R. I. 142 and *Smith* v. *Hall*, 20 R. I. 170.

A form of a decree in conformity with this opinion may be submitted for approval.

*Elisha C. Mowry*, for complainants.

*Frank W. Hackett, Mendell W. Crane, Walter A. Edwards, Eliot G. Parkhurst, Edwards & Angell, Richard W. Hale, George A. Moriarty, Greenough, Easton & Cross, Frank T. Easton*, for various respondents.