T. Everett Starrett, *Tr.* *vs.* Elizabeth Goodwin Botsford *et al.*

DECEMBER 22, 1939.

Present:   Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CONDON, J. This cause was begun by a bill in equity filed in the superior court by the trustee under the will of William P. Goodwin, late of the city of Providence in this state, deceased, against every person who, in his or her own right or as executor of a will or administrator of an estate, has an interest in the question of the proper construction of the fifth, sixth and seventh clauses of the first-mentioned will. The prayer of the bill is for instructions as to the manner in which the complainant as such trustee should now make distribution of the trust estate. When the pleadings were closed and the cause was ready for hearing for final decree, it was certified to this court for determination, under general laws 1923, chapter 339, sec. 35, now general laws 1938, chapter 545, §7.

William P. Goodwin died May 14, 1921 in his sixty-ninth year, leaving the will in question, which was duly probated and the clauses now in question are as follows:

"Fifth: The rest, residue and remainder of my estate, real, personal or mixed, I give and bequeath to

my said sister Sarah Jane Goodwin, but in trust nevertheless for the following purposes: viz. To hold such rest, residue and remainder of my estate in trust and to apply the income or use thereof to her own use and benefit so long as she is unmarried with full power to invest and reinvest the same and to sell transfer and deed any of the real estate included in this trust and thereby giving the purchaser a good title thereto and such purchaser shall not be charged with the duty of seeing to the application of the proceeds of any sale of any of the property belonging to my estate.

Sixth: Upon the day of marriage, or upon the death of said Sister Sarah Jane Goodwin, such part of any estate remaining under the trust created under clause Fifth of this will shall be divided amongst my legal heirs in accordance with the inheritance laws of Rhode Island.

Seventh: I hereby emphasize the fact that it is the paramount intent of this will to provide for the comfort or necessities of my said sister Sarah Jane Goodwin so long as she lives unmarried even to the consuming of my estate, only intending to dispose of that which may remain after her marriage or death."

The facts are not in dispute. The testator's sister Sarah Jane Goodwin, who was named as executrix of the will, entered upon the performance of her duties as such and set up the trust estate provided for in the fifth clause. She acted as the sole trustee thereof until 1935, when on her petition the complainant was appointed cotrustee with her. He continued to act with her until her death, still unmarried, on December 24, 1938 and is now the surviving trustee. Upon her death it became his duty, under the sixth clause of the will, to divide the principal of the trust estate among the testator's "legal heirs in accordance with the inheritance laws of Rhode Island."

The main question which has arisen between the two groups of respondents, and as to which their interests are

adverse to each other, is which of two possible meanings should be given to the above expression, "my legal heirs", as used by the testator in the sixth clause of his will.

By one of these possible meanings, which is advocated by one group, it signified his heirs in the technical legal sense of that term, that is, the persons *who at the time of his death* would be entitled, under the statute of descent of Rhode Island, to inherit his real estate of inheritance if he died intestate. It is contended by the other group that the testator used the words "my legal heirs" as meaning the persons who, *when Sarah Jane Goodwin married or died,* would be entitled, under the statute of descent, to inherit his real estate of inheritance, as his heirs, if he had died intestate immediately after the date of the marriage or death of said Sarah Jane Goodwin.

In shorter, though perhaps less technically exact language, the main question is whether the testator's language should be construed as meaning that his "heirs", among whom the trust estate was to be divided at the marriage or death of Sarah Jane Goodwin, should be determined as of the date of *his* death or as of the date of *her* marriage or death.

Counsel for those respondents who would fare better under the latter construction have also contended that, even if that construction be rejected, still at any rate the word "heirs" should not be construed as including the sister herself, because the result of that construction would be that her marriage or death would not merely terminate her equitable estate in the *income and use* of the trust estate, but would also result in vesting in her or in her estate the legal title to a large share of the *principal* of what had been the trust estate. We shall consider this third possible construction of the sixth clause of the will after we have considered which of the two first mentioned possible constructions is the correct one.

Whether a testamentary gift vests in interest immediately on the death of the testator depends on the intention of the testator. This intention, however, "is the intention testamentarily expressed; and when the testator uses familiar legal words, he must be presumed to have used them in their ordinary meaning, until the contrary *clearly* appears." (italics ours) *Kenyon, Petitioner*, 17 R. I. 149, 154, 163.

In the will before us the testator states that upon the death or marriage of Sarah Jane Goodwin he wishes what remains of his estate to "be divided amongst my legal heirs in accordance with the inheritance laws of Rhode Island." Nowhere in his will does the testator indicate that he used the word "heirs" in any peculiar sense different from the generally accepted sense of that term. Under such circumstances, we are not at liberty to assume that he must have used the word in a different and special sense merely because by such an assumption we would arrive at what may seem to be a more practical result than is reached if we permit the testamentary language to speak for itself.

Concerning the problem of determining the intention of the testator, it was stated in *Harris* v. *McLaren,* 30 Miss. 533, which statement was quoted with approval in *Kenyon, Petitioner, supra*: "We can only know that intention by referring to the language which he has employed, and to those associated circumstances which the law has declared shall indicate his wishes. The terms 'lawful heirs', 'right heirs', and 'heirs' are synonymous; their significance is fixed by law; and when they are used in a deed or will without any superadded words or phrases, indicating a different meaning, they are always understood to be used according to their legal acceptation."

An heir is one on whom the local law of descent casts the inheritance on the ancestor's death; and, where a testator uses that word in his will, it is presumed, in the absence of a *clearly* indicated contrary intent in the will, that he used it

in that sense. *Goodgeon* v. *Stuart,* 50 R. I. 6. And it has also been said by this court that: "Under the well established rules of construction the word 'heirs' is held to refer to the living person or persons holding that relation at the time of the testator's death in the absence of an intention to the contrary *clearly* evidenced in the will itself." (italics ours) *Dorrance* v. *Greene,* 41 R. I. 444, 451. Thus in both of these cases the court lays down the same rule, although in the first-cited case it found that the word "heirs" in the will before it was used by the testator in its generally accepted legal sense, and in the second case it was used in a special sense which was clearly evident from other language in the will.

The burden is plainly on those who argue for a construction that would determine this testator's heirs as of the death or marriage of Sarah Jane Goodwin, because such a construction can only arise from language which clearly shows the testator's intent to use the word "heirs" in that special rather than its ordinary sense. The testator's language, in our opinion, does not clearly submit to such a construction. On the contrary, it appears to us that he has used language which quite clearly created a remainder to his legal heirs that vested immediately upon his death. "The law favors vesting of estates immediately upon the death of the testator, and will not regard the remainder as being contingent, in the absence of a *clear* intent on the part of the testator to that effect . . . ." (italics ours) *Taber, Tr.* v. *Talcott,* 40 R. I. 338, 342. An intention to defer vesting the remainder is not to be inferred because of the fact that the first taker is one of the class designated to take in remainder. "Nothing is more common than that an estate for life should be given to one to whom a remainder over in fee is afterwards devised." *Doe dem. Garner* v. *Lawson,* 3 East 278, 291.

And so in the will before us the fact that Sarah Jane Goodwin, a legal heir of the testator under "the inheritance laws of Rhode Island", took by name in the will a life interest in the same estate affords no clear ground for rejecting the literal, ordinary and legal sense of the word "heirs" and for construing such word to mean those who would qualify as his heirs had he died immediately after the marriage or death of Sarah Jane Goodwin.

The respondents who urge such a construction "admit that, if there is no evidence of a contrary intent the term 'heirs' means heirs determined at the time of the testator's death"; but they argue that this court "has repeatedly held, in the construction of wills involving limitations most closely resembling those of the present will, that the testator used the word 'heirs' not in its ordinary sense but as designating a class to be determined as of a later period." And they cite the following cases upon which they most strongly rely in support of their position. *Dorrance* v. *Greene,* 41 R. I. 444; *Taber, Tr.* v. *Talcott,* 40 R. I. 338; *Branch* v. *De Wolf,* 38 R. I. 395; *Tyler for an Opinion,* 30 R. I. 590; *De Wolf* v. *Middleton,* 18 R. I. 810.

These respondents concede that there is another line of cases "holding that 'heirs' in connection with a gift of a remainder interest means heirs determined as of the time of the decedent's death", but that such cases "are readily distinguishable from the present one." Those cases are *Grosvenor* v. *Bowen,* 15 R. I. 549; *Green* v. *Edwards,* 31 R. I. 1; *Roberts* v. *Wright,* 48 R. I. 139; *Kenyon, Petitioner,* 17 R. I. 149; *Oulton* v. *Kidder,* 128 A. 674 (R. I.); *Goodgeon* v. *Stuart,* 50 R. I. 6, decided in 1929.

On the other hand, the respondents, who urge that the word "heirs" in the present will should be construed in its ordinary legal sense, contend that the three last above-cited cases particularly resemble the instant cause. They rely

upon those cases, as well as upon the recent case of *Barker* v. *Ashley*, 58 R. I. 243, to support their position. We agree with this contention and are of the opinion that the instant cause should be decided consistently with those cases.

Moreover, these same respondents claim that each case, even in the group of cases first above cited upon which the other respondents rely in support of their position, expressly recognizes the general rule that the word "heirs" in a will is to be given its ordinary legal meaning. But they point out that in each of those cases the language of the will before the court was such that it *clearly* indicated to the court that the testator had not intended to use the word "heirs" in its ordinary legal sense, and that therefore the court, in accordance with the primary rule of construction of wills, was bound to give and did give effect to that intention.

We are of the opinion that such is a correct view of those cases. An examination of them will disclose that in each case the testator, to effect the ultimate disposition of his estate, used markedly different language from that which the testator used in the instant cause. It is also evident from the opinion of the court in each of those cases that it found in the testamentary language an element of futurity annexed to the substance of the gift *clearly* indicating an intention on the part of the testator to dispose of his estate to a class of persons determinable on the happening of an event other than his death, although he used the word "heirs" to describe such a class. In no case, however, did the court cast doubt on the general rule, but rather approved it, subject only to the primary rule of finding the intention of the testator. For example, in the first decided case in that group of cases— *De Wolf* v. *Middleton, supra*—the court said: "While the general rule is that the heirs of a testator are to be taken from the time of his death, yet the rule gives way to a contrary intent to be found in the will." And see also language hereinbefore quoted from the last

decided case in that same group of cases—*Dorrance* v. *Greene, supra.*

As an illustration of language which this court found sufficient to raise such an intention of the testator contrary to the general rule, we may consider briefly the above-cited *De Wolf* case, which was the first case decided by this court in which it construed the word "heirs" as intending to designate a class which was to be ascertained at a time other than the date of the testator's death. There the language under consideration furnished strong ground for finding that the testator was thinking of a class to be determined by some future event beyond his own death. He devised his farm to his daughters, Charlotte and Maria, their heirs and assigns, but "provided, however, that in case my daughters . . . should die, leaving no surviving issue, then it is my will that the estate, on their decease, be divided among my heirs at law, according to the statutes of descent . . . ." By this language, of course, there was no certainty that his heirs would ever take. Their right was wholly contingent upon the uncertain event of the testator's daughters dying without leaving issue surviving them. As this court said, at page 815 of the opinion: "In making such a gift his mind would naturally look forward to the time when the estate *might* vest in possession, and so the words used comport with an intent to point out the time and mode of ascertaining who the heirs will be, by designating a class to take as executory devisees." (italics ours)

It is illuminating to observe that in that case the court recognized that where "there was a precedent estate supporting a remainder, created from the death of the testator, but contingent upon an event", it would follow that "the heirs must be ascertained as of the testator's death, because the interest in the remainder began then." They held that there was no such prior estate in the will before them, but that the devise over was limited on a fee and was therefore

an executory devise. And in that case the court admitted that, if the language of the will created a contingent remainder, it would have to hold that the word "heirs" would mean persons who were heirs of the testator as of his death.

In our present case the testator has created more than a contingent remainder; he has created a vested remainder. The language of the sixth clause postpones merely the enjoyment but not the vesting of the interest devised. Although no express gift to the *cestuis que trust* was made, other than a direction to divide the trust estate between them at a future time, nevertheless, by the fifth and sixth clauses an absolute gift in trust to the trustee was made and it conferred upon the *cestuis que trust* an immediate vested interest. The general declaration of trust which precedes the direction to pay implies an absolute gift of a present beneficial interest. *Booth* v. *Booth*, 4 Ves. Jr. 407; *Saunders* v. *Vautier*, Cr. & Ph. 240; *Hanson* v. *Graham*, 6 Ves. Jr. 239, 248. The words in the sixth clause, "shall be divided", therefore furnish no sufficient ground for holding that the testator clearly intended to annex futurity to the vesting of the gift, so as to make the general rule inapplicable. The futurity denoted by those words relates merely to the time of enjoyment and not to the vesting of the devise. The gift of the interest here begins with the declaration of a present absolute interest for the benefit of the *cestuis que trust*.

We have treated this phase of the matter at some length mainly for the reason that we do not wish to be understood as saying anything here that would be considered critical of the conclusions to which this court arrived in the cases cited by the respondents, who urge that this testator's heirs should be ascertained as of the marriage or death of Sarah Jane Goodwin. On the contrary, we recognize those cases as neither inconsistent with the conclusion to which we come in the instant cause nor contrary to those cases cited by the respondents, who urge that the testator's heirs should be

determined as of the date of his death. Both lines of cases may stand, as they illustrate not a divergence on the law, which should govern the construction of language in a will such as in the instant will, but rather merely different applications of accepted rules to variations in the mode of particular testamentary expressions. On the one side the testamentary language afforded the court grounds for finding a *clear* intent of the testator to use the word "heirs" in a special sense rather than in its ordinary legal sense, and on the other side furnished the court no such grounds.

On the view which we have taken, a further question arises. Those respondents who argued for the postponement of the ascertainment of the testator's heirs to the marriage or death of Sarah Jane Goodwin urge that, even though the heirs are to be ascertained as of the testator's death, Sarah Jane Goodwin should be excluded therefrom. They argue that the testator did not intend that she should have both a life interest in the whole estate and a vested remainder. They assert there is an incongruity in such a construction. We see no incongruity from the point of view of the law. As was said above, it is not an uncommon thing for one who is given a life interest also to be included among those to whom is given the remainder. However, they cite, in support of their view, *Rogers* v. *Rogers,* 11 R. I. 38. It is true that there the court did make such a construction, but in doing so it admitted that it was disregarding the general rule of law because of the particular circumstances which it held were indicated by the testator's whole will. We find no indication in the present will which would justify us in doing what was done in that case.

For the reasons stated, we are of the opinion that the heirs of the testator, within the meaning of his testamentary language, are those who composed that class at the date of his death.

On December 29, 1939, the parties may present to us a form of decree, in accordance with this opinion, to be entered in the superior court.

Moss, J., dissenting. Because of a considerable number of reported cases in this state which in my judgment lay down and apply a rule of law that is inconsistent with the opinion of the majority of the court in this cause, and because of the absence of cases in this state which in my judgment reject that rule, and because of certain special features of the will, I dissent from that opinion.

The fundamental problem here is to determine in what sense the testator uses the words "my legal heirs" in the sixth clause of his will. That clause must be construed in the light of the fifth and seventh clauses, in which he makes his aged and unmarried sister both sole trustee and sole beneficiary of his residuary estate, much the greater part of it being personal property, so long as she lives unmarried, and gives her the power of sale and reinvestment and the power to use for her necessities or comfort not only the income, but also the principal, even to the consuming of the whole of it. In the fifth clause he directs that upon her marriage or death "such part of any estate remaining under the trust shall be divided amongst my legal heirs in accordance with the inheritance laws of Rhode Island."

To this sort of a question, concerning the creation of estates in real and personal property by will, the doctrine of *stare decisis* applies with special force. Therefore and because in my judgment the rule of construction to be applied to the will now before us is settled by the clear and great weight of authority in this state, I see no good reason for going elsewhere for authority.

In the opinion of the majority of the court six Rhode Island cases are cited as "holding that 'heirs' in connection with a gift of a remainder interest means heirs determined as of the time of the decedent's death." It seems to me desirable to discuss three of these six cases before taking up any of the other or any of the cases in which the words "my heirs" in a will have been construed otherwise. Those three cases are *Grosvenor* v. *Bowen,* 15 R. I. 549, (1887); *Green* v. *Edwards,* 31 R. I. 1, (1910); and *Roberts* v. *Wright,* 48 R. I. 139, (1927).

In the first of these cases the testatrix devised certain real estate to her husband for life and upon his death to such persons as he might by last will appoint and, in default of appointment, to her own heirs at law. This court held the remainder to be a vested one, subject to be divested by the exercise of the power of appointment. The estate in remainder having been created by words of present devise and not by a direction to a trustee to divide and pay over the trust estate to the testator's heirs upon the happening of a future event, the case is obviously distinguishable from the instant one.

In *Green* v. *Edwards, supra,* the testator gave most of the residue of his property to trustees in trust for his three children and their issue by language which this court construed as creating equitable estates-tail in them, with cross remainders for similar estates. The testator then directed the trustees as follows: "In case of the death of all my said children without issue, they shall transfer and convey the estate held by them in trust to my heirs at law according to the statutes of descent and distribution then in force in the State of Rhode Island." At page 19 of the opinion this court said that by this quoted language "a vested remainder is given to heirs at law *to be then ascertained.*" In view of the words which I have italicised in this quotation, I do not see how that

case can fairly be quoted as supporting a contention that in the instant cause the testator used the word "heirs" in the sense of his heirs to be ascertained at the time of his death.

In *Roberts* v. *Wright, supra,* the testator gave to his wife the interest on his money on deposit in a certain bank and then added: "The interest of this money goes to my wife as long as she lives, when she dies it is to go to my next heir." As to the gift over, this court simply said that it found a reasonable construction of the paragraph to be that upon the death of the testator's wife the fund "passed to the person or persons who came within the designation of the testator's heir or heirs at the time of his death."

It does not appear from the opinion that any party to the cause made any contention against this construction of this part of the will; and it should be noticed that the final disposition of the fund in question did not, as in the present cause, consist solely of a direction that upon the happening of a certain event any estate remaining under the trust "shall be divided amongst my legal heirs" or of any similar direction.

In my judgment none of the three cases just discussed furnishes any material support to the contention that in the instant cause the testator used the word "heirs" in its ordinary sense; and apparently the counsel who argued for that contention in this cause took the same view of those cases, as they did not in their comprehensive briefs cite any of them.

It seems to me that the proper rule of law to be applied in the solution of the fundamental problem in the instant cause should be determined from a consideration and comparison of the cases which *are* relied upon by the counsel for the respective groups of respondents and in-

clude, I believe, all the Rhode Island cases that are really relevant. I therefore take up these cases in their chronological order.

In *Staples and Pearce, Trs.* v. *D'Wolf,* 8 R. I. 74, 117, (1864), the testator, by the twelfth clause of his will, gave and devised the residue of his estate to his executors, in trust for certain persons and their heirs, for the term of twenty years, the income to be paid to these persons, "and their respective heirs", for that term. These persons, who were all named in this clause, were his children, the children of his deceased daughter, who as a group were to have one share, and his grandson. He then directed that at the end of the twenty years the property be divided equally among these same persons, "or their respective heirs, should any of them be dead, share and share alike."

At page 118 the court said: "The law favors the vesting of estates; and, when a gift is made to a person *in esse,* it passes to the legatee, as a vested interest, immediately on the death of the testator. . . . And if there be a prior gift created, determinable upon an event certain to take place, and there be a gift over upon such determination, the last gift will vest with the first, and it will be held that the possession and enjoyment of the gift is postponed, but not the gift itself. . . . It is, however, a question of intent, to be gathered from the whole will, and the construction might be varied, if from other parts of the will, it appeared that the testator intended that the gift itself should not take effect until the happening of some event in the future; and the question is always, —is futurity annexed to the substance of the gift? If so, the vesting is postponed; or is it annexed to the time of payment only? If so, the legacy vests immediately."

At page 120 the court said: "That a trust is interposed does not prevent the gift from vesting, in interest, in

the *cestui que trust*.  The rule referred to is, that where the gift is to be implied only from the direction to divide or pay, or to transfer at a future time, the vesting will be postponed to such time, unless the contrary appear from other expressions of the testator, implying a postponement of the possession only, and not the vesting."

Considering all relevant language of the will before it, the court found that the intent of the testator was to give both the equitable estate for twenty years and the estate in remainder thereafter to the same persons, named, and their respective heirs, and that both estates vested on the death of the testator.  But the above quotations from pages 118 and 120 of the opinion show that the court recognized the rule stated on page 120 as being applicable to remainders and it did not suggest that it applied only to executory devises.

In *Rogers* v. *Rogers*, 11 R. I. 38, (1874), the gift over of the residue, after the termination of a trust estate for the life of the testator's widow and for her benefit, was in the form of a direction to the trustee to divide the trust estate, after her death, "equally between his eight children now living, or their legal heirs, *per stirpes* and not *per capita,* if any of them be dead when this bequest takes effect", meaning by "his eight children" the children of the trustee.  This court, in the opinion, recognized that the fact that the gift over was in the form of a direction to the trustee to divide the trust property, on the death of the life beneficiary, among a class of persons was a reason for finding an intention on the part of the testator to "annex futurity" to the substance of. the gift, the rule often referred to as the "divide and pay over rule." But, after much hesitation, the court found that other language in the will, showing that the testator intended the gifts over to vest at his death, should be held to prevail over the indication to the contrary from the direction to divide the trust estate in the future.

There again, as in the case just before discussed, the gifts over, at the end of the particular estate, were to certain persons fixed at the execution of the will, or to their respective heirs in case of the decease of any of them. It should be noticed that in the opinion the fact that the gifts over in question were remainders and not executory devises was not mentioned as a reason for not applying the "divide and pay over rule."

In *Kenyon, Petitioner,* 17 R. I. 149, (1890), the testator gave all his property to a trustee and his heirs for the life of the testator's son, Daniel C. Kenyon, in trust for the latter and with power to use some of the *corpus* of the trust estate for the benefit of the son; and then added: "After the decease of said Daniel C. Kenyon, I give and bequeath all the property affected by the above trust, which shall then remain, to my own right heirs." The son having later died without issue, it was contended that, because the gift over, on the death of the son, was of what should then remain of the trust property and also because, at the father's death, the son was his only heir, the "heirs" to whom the remainder was given should be determined as of the date of the son's death.

But this court overruled that contention and held that the grounds relied upon were not strong enough indications that the testator intended to annex futurity to the substance of the gift, and to have the class of "heirs" determined as of the date of the son's death, to overcome the effect of *the words of present gift* and "the rule that the law favors vesting very strongly." The decision was that the son, on his father's death, received also a *legal* estate in remainder, expectant upon the determination of his own *equitable* life estate.

The fundamental distinction between the will there construed and the one now before us is that in the former one the testator made the gift over, after the decease of

his son, by words of present gift only, "I give and bequeath", while in the present will the testator states that upon the marriage or death of his sister, "such part of any estate remaining under the trust . . . shall be divided amongst my legal heirs", words of future import only.

In *De Wolf* v. *Middleton,* 18 R. I. 810, (1893), the testator devised certain real estate to his widow for her life and then to his two daughters and their heirs and assigns forever. He next provided that in case they should die without leaving issue, "then it is my will that the estate, on their decease, be divided among my heirs at law, according to the statutes of descents, their heirs and assigns forever; and I do devise the same accordingly." This court held that the testator's "heirs at law" under this clause should be determined as of the time of the death of the survivor of the life tenants, without issue.

The court there recognized the *general* rule that the heirs of a testator should be determined as of the time of his death, but held that it must give way to a contrary intent found in the will; and it found such a contrary intent in the language above quoted. After referring to and quoting from it, the court, at page 815, said as to the testator: "In making such a gift his mind would naturally look forward to the time when the estate might vest in possession, and so the words used comport with an intent to point out the time and mode of ascertaining who the heirs will be, by designating a class to take as executory devisees."

It is true that in that case the court called attention to the distinction between executory devises and remainders in the matter of vesting, and to the fact that the gift in question was an executory devise, giving that as one reason for reaching the conclusion which it did reach. But it also gave an additional reason for that conclusion,

saying on page 816: "Moreover, the words are that the estate, 'on their decease *be divided* among my heirs at law'. The division was to be prospective, and we see no reason why the class should not also be taken to be so. For these reasons, as well as those given in the previous opinion, we think that these words were intended to fix the time for the vesting of the estate and for the ascertainment of the persons to take in possession. They are not substantially different from cases where the devise is to those who shall *then* answer the description."

In *Tyler for an Opinion,* 30 R. I. 590, (1910), the language in question was: "Third. I give, devise and bequeath unto my granddaughter, Clara M. Robinson, all the rest and residue of my estate of every kind and wheresoever situate or lying to be and remain to her, her heirs and assigns forever; if the said Clara M. Robinson should die without leaving living issue, born of her own body, then in that case I give, devise and bequeath my said estate to my heirs at law." Clara M. Robinson died without leaving issue. In that case the interests in question were executory devises and this court there reached a result similar to that reached in *De Wolf* v. *Middleton, supra,* namely, that the "heirs at law" should be determined as of the date of the death of Clara M. Robinson. This it did on the authority of that earlier case, although in the will in the earlier case there were not only words of present gift of a future interest to the testator's heirs, as in the *Tyler* case, but there was also a direction that upon the termination of a particular estate the property *should be divided* among the testator's heirs at law, a feature which was absent in the later case.

In other words, the court decided the later case solely for the first reason given for the like result reached in the former case, *i.e.,* that the estate in question was an executory limitation, the second reason, *i.e.,* the direction

for a division among the testator's heirs on the happening of a future event, being absent in the latter case. But there is no statement or clear implication in the opinion in either case that the second reason would not be sufficient, if present, even in the absence of the former reason.

In *Branch* v. *De Wolf*, 38 R. I. 395, (1915), the testator left real estate to his wife for life, then to his niece for life, and then to his nephew in fee, on condition, however, that the nephew would change his name to that of the testator. But the testator provided that if this nephew should reject the condition, this real estate should be sold and the proceeds thrown with the personal property and that "the whole is to be divided between my sisters if alive; or their heirs, if dead, in equal proportions."

The nephew, when the time came for his interest to come into possession, rejected the condition; and the above-quoted provision then came into effect. At that time the testator's sisters were both dead. The question then arose whether the sisters' heirs, who were thus entitled to receive the personal property, were to be determined as of the dates of the deaths of the sisters respectively or as of the date for distribution. This court, at page 411, held that the heirs should be determined as of the date for distribution, saying that the answer to the question was found in the decision of the case of *De Wolf* v. *Middleton, supra,* and quoting nearly all of what I have above quoted from the opinion in that earlier case.

In the later case the interest in question was a *contingent remainder*, dependent upon a contingency with a double aspect, and not an executory devise, though this court, in the opinion, did not call attention to that fact. It rested the decision solely on the second reason given in the earlier case, the use of words directing division among heirs at the termination of the prior estate, and gave effect

to that reason, although the interest involved was not an executory devise, as in the earlier case. At page 401 of the opinion the court says: "It would be difficult to find a case where it is more plainly evident that futurity is in the essence of the gift."

In *Taber, Tr.* v. *Talcott,* 40 R. I. 338, (1917), the testator had left the residue of his estate in trust to pay the income to his wife for her life and then to his three children and the survivors and survivor of them. He had then directed that upon the death of the last survivor of his wife and children the trustees should discharge themselves by conveying all the trust property then held by them "to my heirs at law and to their heirs, executors, administrators and assigns forever." After a discussion of preceding cases on. the subject in this state, this court held that the testator's "heirs at law" should be determined as of the date for the final distribution of the trust estate.

In *Dorrance* v. *Greene,* 41 R.I. 444, (1918), the testator, after giving his wife $12,000 in lieu of her dower or other interest in his estate and making many small bequests, gave the residue of his property to trustees, in trust for the benefit, during her life, of his daughter, who was his only heir at his death. In the event that she should die leaving children surviving her, he provided that they should have the full benefit of the trust estate. In the event that she should die without leaving any living child, he directed that the trustees make certain payments and should *distribute* the residue of the trust estate to and *among* his "heirs at law in the proportions in which they would severally be entitled under the statutes for the distribution of *intestate estates.*"

This court found that it was plain, from language in the will, that the testator did not intend that his wife should have any benefit from this last provision. It also

called attention to the fact that the daughter was his only heir at his death. It then held that with this situation in mind "it seems reasonably plain that the testator in providing as to this residue that the trustees *'distribute'* it 'to and *among* my heirs at law in the proportions in which they would *severally* be entitled' is directing his mind to the death of his daughter at some time in the future, near or remote as the case might be, and to such distribution among those who would then be his heirs . . . . . Construing the will thus the 'heirs at law' are to be determined at the date of the death of the daughter."

That case was obviously a clearer one for such a construction of the words "heirs at law" than the case of *Taber* v. *Talcott, supra,* or the instant case. But the court plainly recognized the direction for *distribution* upon the termination of the equitable life estate as evidence of an intention by the testator to annex futurity to the substance of the provision for an equitable interest in the nature of a *remainder* in his heirs at law.

This court also said, in its opinion, that the case was readily distinguished from the *Kenyon* case, *supra,* because of the use of the words "I give and bequeath" in the *Kenyon* will. It also indicated by the way in which it referred to *Taber* v. *Talcott, supra,* that it agreed with the reasoning in that case and the comment, in the opinion therein, on the previous Rhode Island cases in which the words "heirs at law" were similarly construed.

It should be noticed particularly that the future interest involved in *Dorrance* v. *Greene* was, as above stated, of the nature of a remainder and not of an executory devise. The court did not find that this prevented the words "heirs at law" from being construed as they were.

Another Rhode Island case relied upon by the group of respondents who contend that in the will now before us

the testator's "legal heirs" should be determined as of the date of his death is *Oulton* v. *Kidder,* 128 A. 674 (1925). There the testatrix, a widow without children, gave the income of all the residue of her estate to her brother for his life, and then added: ". . . and after his decease I give, devise and bequeath the same to, including Helen E. Oulton and my legal heirs (as Mrs. Oulton is niece of my husband I wish to include her in the residuary of my estate) to them their heirs and assigns forever." This court held that the "legal heirs" of the testatrix should be determined as of the date of her death. The gift to them was stated exclusively in terms of present gift. The case therefore does not support the contention for which it is cited.

A case decided in 1929 and cited by the same group of respondents is *Goodgeon* v. *Stuart,* 50 R. I. 6. There the testator devised certain real estate to trustees, in trust to pay the income therefrom to his wife during her life and then equally to his four children, naming them, during their respective lives; and upon their respective deaths to divide the principal of their shares, in fee, among such of their respective children as should survive the testator. Cross remainders were provided for in case of the death of any of the testator's children without leaving any surviving issue. Then came the provision which had become operative before the case came before this court, the widow having died, and all the children having died intestate and without having been married. This provision was that the trustees hold the property "in case of the failure of all the limitations and objects of the preceding trusts In Trust for my own right heirs forever."

This court, in its opinion, referred to most of the cases discussed *supra,* and stated that nothing in the will indicated "that the testator did not use the word 'heirs' in the ordinary, legal sense." It therefore held that he,

"by the final limitation to his 'own right heirs forever', intended to designate the persons who were his legal heirs at the time of his death . . . ." There was no provision for division or payment over; and after considering the opinion and all the language quoted therein from the will, I do not believe that the case is inconsistent with the cases which are relied on by the other group of respondents, in support of their contention that in the will before us the testator clearly used the words "my legal heirs" as meaning the persons who would be his heirs in a non-technical sense immediately after the marriage or death of his sister, the life beneficiary of the trust.

The most recent case cited by the former group in support of their contention is *Barker* v. *Ashley*, 58 R. I. 243 (1937). In the will there involved, the testator, after giving to his wife, in all his property, what this court construed to be a life estate with very broad powers of sale and consumption as well as of use, stated that, if there was anything left above expenses at the time of both their deaths, it was to be equally divided among their respective brothers and sisters or, if any of them should be dead, to go to their children, except that a certain brother's share should go to his named son, less $150. The question was raised whether the remainders thus provided for were vested or contingent and this court held them to be vested.

But there it was not directed that the remaining property, upon the death of the widow, the life beneficiary, be divided among a class of "heirs" or other class of a general description, with the question left reasonably open as to when membership in the class should be determined, but that it be divided among definitely described persons, determined at the date of execution of the will, with what amounted to gifts over, in case any of them should die in the meantime, to their respective children. With re-

spect to the question of the time of vesting, the will much resembled that in *Rogers* v. *Rogers, supra,* and I am of the opinion that it is clearly distinguishable from the one now before us.

There appears to me to be an unbroken line of authority in this state, from *De Wolf* v. *Middleton, supra,* decided in 1893, down to the present time and composed of at least four cases, above cited, which supports what has been called "the divide and pay over rule". In two earlier cases, *Staples and Pearce, Trs.* v. *D'Wolf, supra,* and *Rogers* v. *Rogers, supra,* the rule seems to have been recognized as valid, though this court found special reasons, throwing light on the actual intentions of the testators, for not applying it in those cases.

The form of this rule that has been thus applied in this state, beginning in 1893, is that if property is given by will to a trustee, to be held in trust for certain purposes until the happening of a described event and then to be divided among the heirs of the testator or of another person, this is a sufficient reason for finding that the testator clearly intended that the "heirs", who would be entitled to the receipt of such property upon the occurrence of that event, should be determined as of the time when that event has occurred. The effect of such a provision might, however, be overcome by other language in the will indicating that the testator's intention was to the contrary.

In view of this unbroken line of authority in this state, supported as it is by reasoning in which I believe there is merit, I am convinced that this rule should now be considered as well settled here, without regard to the question whether or not the same rule is generally applied elsewhere.

The next question which I believe should be considered is whether, besides what has been already discussed, there

is anything in the admitted facts or in the language of the will which throws any light upon the sense in which the testator here probably used the words "my legal heirs". In the first place we have the fact that the will was holographic, with nothing to indicate that he had any professional assistance in drawing it. I believe that this fact, on principle and authority, considerably lessens the weight to be given to the usual presumption that the testator used the words in question in their technically accurate signification.

Then also we have the language of the seventh clause of the will, by which the testator emphasized the fact that it was his paramount intent to provide for the comfort or necessities of his sister Sarah Jane, so long as she lived unmarried, even to the consuming of his estate.

Reading this clause with the fifth and sixth, it is obvious that this sister was given the power and right to consume even the entire trust estate and that only what, *if any,* of it remained at her marriage or death was then to be divided among the testator's heirs. It may be that the mere fact that under the terms of the will there might be nothing then for the heirs to receive would not prevent these interests from being vested in the *technical legal* sense. But it would prevent them from being *salable,* as a practical matter, and would therefore eliminate one of the motives for construing testamentary interests of heirs as vested rather than contingent. This is another reason, in the instant cause, for giving less weight than usual to the presumption as to the construction of the word "heirs".

Moreover the fact that the direction to divide expressly applied only to what property *might remain,* after the sister had consumed all of it which she chose to consume for her comfort or necessities, shows that the testator's mind was strongly directed to the time of her marriage or

death, because he was providing that only *then* would the questions be determined whether there would be anything to be divided, and if so, what it would be. This fact therefore strongly indicates that he intended to annex both futurity and contingency to the substance of the provision for the benefit of his "heirs at law".

When the language of these three clauses is carefully considered, the most natural inference to be drawn is, in my judgment, that if this sister, who was old and unmarried when the will was made, should die without having married, the testator did not wish anyone to get any part of his estate, then remaining, *through her* as one of his heirs; and that, if she should marry and thus have a husband, presumably able to support her, he wished her then to be precisely in the same position as his other sister, who was married. Each of them would then become entitled, as one of his heirs determined as of that date, to receive from the trustees a share of any trust property then remaining.

Taking all these matters into consideration and applying to the pertinent language of the will the rules of law which I believe to be applicable thereto according to the unbroken line of authority in this state, it is my opinion that the trustee under this will should be instructed as follows: That the "legal heirs" of the testator, among whom the trust property is to be divided, are to be determined as of a date directly after the death of Sarah Jane Goodwin; that the persons who are entitled to receive the trust property are the persons who would have been the heirs of the testator, if he had died immediately after her death; and that they are entitled to receive the property in the same shares as they would have been entitled as his heirs to receive his property, if he had died at that time intestate.

Baker, J. concurs in the opinion of Moss, J.

*Stockwell, Chace & Yatman, Elmer S. Chace,* for Complainant.

*Hinckley, Allen, Tillinghast & Wheeler, Frederick W. Tillinghast, S. Everett Wilkins, Jr.,* for Botsford *et al.*

*Gurney Edwards, Edward T. Richards, Edwards & Angell,* for Chapin *et al.*