IN RE CARROLL'S ESTATE. CARROLL ET AL., RESPONDENTS, v. KING ET AL., APPELLANTS.

(No. 4,603.)

(Submitted March 8, 1921. Decided March 29, 1921.)

[196 Pac. 996.]

*Will Contests — Incompetency of Testator — Evidence — Sufficiency—Taxing Costs to Contestees—Abuse of Discretion—Trial—Special Interrogatories—Number and Form—Discretion—Directed Verdict—Proper Refusal.*

Will Contest—"Incompetency"—Definition.
  1. *Held*, that an instruction to the effect that a person may be mentally incompetent to make a will and yet not be an insane person was proper, since the word "incompetent," when applied to an individual's capacity to make a will, means any person who, whether insane or not, is, by reason of immaturity, old age, disease, weakness of mind or from any other cause, unable to understand what property he has, the relationship he bears to those who would naturally be the objects of his bounty, and what disposition he may be making of his property at the time.

Same—Testator may Disinherit Relatives.
  2. A person who has the capacity to make a will has the right to disinherit his relatives.

Trial—Instructions—When Refusal Proper.
  3. An instruction correct in part only or one covered by an instruction given is properly refused.

Same—Directed Verdict—When Motion Properly Refused.
  4. Refusal to grant defendant's motion for a directed verdict is proper where there is any substantial evidence to support plaintiff's case.

Will Contest—Verdict Conclusive, When.
  5. In a will contest, the verdict of the jury will not be disturbed on appeal if there is substantial evidence upon which it may be sustained.

Same—Incompetency of Testator—Evidence—Sufficiency.

    6.  Evidence reviewed and held sufficiently substantial to warrant a verdict that at the time testator made the will sought to be set aside, he was incompetent.

Same—Special Interrogatories—Number and Form—Discretion.

    7.  The number and form of special interrogatories to be submitted to the jury in a will contest are matters lodged in the discretion of the trial court, so long as they are sufficient to comprehend the issues involved in the case; hence, where it submitted one interrogatory on the one issue involved, to-wit, the competency of testator at the time he made the will, refusal of three others offered by contestees on the same subject did not show an abuse of discretion, in view of the instructions given thoroughly covering the issue.

Same—Costs—Court may Tax in Its Discretion.

    8.  Under section 7412, Revised Codes, the trial court may in its discretion order that the costs incident to the revocation of the probate of a will be paid out of the property of the decedent if the revocation was resisted in good faith and upon substantial grounds, or, in case of bad faith and without justification, tax them against the party who resisted revocation.

Same—Taxing of Costs Against Contestees—Abuse of Discretion.

    9.  *Held*, under the above rule, that where executors would have been remiss in the performance of their duty had they not made defense against the attack upon the will sought to be set aside, and there was ample evidence in the record of their and the beneficiaries' good faith and justification for the defense, the district court abused its discretion in taxing the costs against contestees individually.

*Appeals from District Court, Silver Bow County, in the Second Judicial District; Wm. H. Poorman, a Judge of the First District, presiding.*

ACTION by Walker B. Carroll and others against L. A. King and others, executors and beneficiaries, to contest the last will and testament of Joseph T. Carroll, deceased. Judgment for contestants. Contestees appeal from the judgment and from the order overruling the motion for new trial. Judgment modified and affirmed.

*Messrs. Walker & Walker, Mr. William Meyer* and *Mr. E. B. Howell,* for Appellants, submitted a brief; *Mr. Frank Walker* and *Mr. Meyer* argued the cause orally.

The sole question for determination is, "Was testator of sound mind at the time the will was executed?" If he was, his precedent and subsequent condition is immaterial. (*In re Murphy's Estate,* 43 Mont. 353, Ann. Cas. 1912C, 380, 116 Pac. 1004.)

Rightly considered, the contestants adduced no testimony worthy to go to the jury of the testamentary incapacity of Mr. Carroll when the will in controversy was executed on the night of October 24, 1917. On the contrary, the evidence of the contestees of the sanity and mental competence of the deceased was preponderating. Although several lay witnesses testified regarding his mental condition, none of them attempted to define the particular kind of insanity from which he was suffering. In view of the fact that contestants did not offer the testimony of any medical experts, the court and jury must have been left in doubt as to the nature of the insanity from which Joseph T. Carroll suffered upon the various occasions testified to by the witness for contestants. This fact becomes very important in the consideration of this appeal. We make this suggestion because under the decisions of this court, as well as the rule of law generally, in the absence of any testimony as to the nature or form of insanity from which Joseph T. Carroll was suffering, there was, of course, no presumption that it continued and was present at the time of the execution of the will. (40 Cyc. 1018 (D) ; *In re Murphy's Estate, supra.*) The burden of proof was upon the contestants. (*In re Murphy's Estate,* 43 Mont. 353, Ann. Cas. 1912C, 380, 116 Pac. 1004; *In re Williams' Estate,* 50 Mont. 142, 145 Pac. 957.)

The court erred in refusing to give instructions correctly defining the effect of the use of narcotic drugs on testamentary capacity. The contestants had introduced evidence showing that the deceased had been committed to the state asylum for the insane because of "excessive use of drugs." Instruction No. 1 offered by the contestants permits the jury to find that the deceased was incompetent to make a will either because of "weakened mentality" or because of the use of drugs during his last sickness. For this reason, if for no other, the effect of the use of drugs upon testamentary capacity should have been defined by instructions. The law is well settled that a person may use drugs and still be competent to make a will. (40 Cyc. 1011; Alexander on Wills,

sec. 350; *In re Wilson's Estate,* 117 Cal. 262, 49 Pac. 172,
711.) A testator has the right to disinherit his relatives, and
to make a will that seems harsh and even cruel. The instruc-
tions offered by defendants along this line accurately stated
the law in differing forms, but all of them were refused. In
support of these instructions we quote the following from
Alexander's Commentaries on Wills: "The rule is that a testa-
tor has the right to make a harsh, unjust, unreasonable, or
even a cruel will; he may disinherit his only child and leave his
property to other heirs or to strangers. Such facts, in them-
selves, do not constitute legal grounds for holding that the
testator was mentally incompetent." (Sec. 355, see, also,
*Field* v. *Shorb,* 99 Cal. 661, 34 Pac. 504; *In re Wilson's Estate,*
117 Cal. 262, 49 Pac. 172, 711; *In re Martin's Estate,* 170 Cal.
657, 151 Pac. 138.)

The court erred in entering judgment for costs against the
executors and legatees named in the will, and in refusing to
amend the judgment in this particular. This was an abuse of
discretion. In defending the probate of the will the execu-
tors and legatees were doing their simple duty. (*In re Whet-
ton's Estate,* 98 Cal. 204, 32 Pac. 970; *In re Dillon's Estate,*
149 Cal. 685, 87 Pac. 379.)

*Messrs. Canning & Geagan, Mr. W. D. Kyle* and *Mr. J. A.
Poore,* for Respondents, submitted a brief; *Mr. Poore* argued
the cause orally.

An assignment of error to the effect that the court erred in
overruling the motion for a new trial is insufficient to present
for review the question whether the evidence sustains the find-
ings of the trial court. (*Neils Lumber Co.* v. *Hines,* 93 Minn.
505, 101 N. W. 959; *Stevens* v. *City of Minneapolis,* 42 Minn.
136, 43 N. W. 842; *Dundas* v. *Grand View Land Co.,* 79 Or.
379, 155 Pac. 365; *Collins* v. *Smith* (Mo. App.), 182 S. W.
1087; *Currier* v. *Teske,* 98 Neb. 660, 154 N. W. 234; *Loving*
v. *Atlantic S. Ry.,* 184 Iowa, 435, 168 N. W. 910; *Western
Union Tel. Co.* v. *Winland,* 182 Fed. 493, 104 C. C. A. 439.)

Evidence showing the general mental condition of the testator's mind both before and after the date of the will was admitted without objection for the 'purpose of showing the condition of the mind at the date when the will was made, and was proper to be considered by the jury for this purpose, and is sufficient to sustain the verdict. (*Spencer* v. *Spencer*, 31 Mont. 631, 79 Pac. 320; *Hoctor* v. *Pavlick* (Mo. App.), 199 S. W. 1038; *Byrne* v. *Fulkerson*, 254 Mo. 97, 162 S. W. 171; *In re Loveland's Estate*, 162 Cal. 595, 123 Pac. 801; *McAllister* v. *Rowland*, 124 Minn. 27, Ann. Cas. 1915B, 1006, 144 N. W. 412; *In re De Laveaga's Estate*, 165 Cal. 607, 133 Pac. 307–314.)

Appellants complain of the refusal of the court to give the following instruction: ''You are instructed that unless the contestants have proved by a preponderance of the evidence that the deceased Carroll was insane at the time the will was made, your verdict must be for the contestees.''

This instruction, if given, would have placed upon the contestants the burden of showing that Joseph Carroll not only did not possess the mentality to understand what he was doing at the time he signed the will in question, but that he was actually insane. This is directly in conflict with instruction No. 3, which made his competency depend upon the question whether he was able to understand and carry in mind the nature and situation of his property and his relation to his relatives and those around him, with clear remembrance as to those in whom and those things in which he has been mostly interested, capable of understanding the act he is doing, and the relation in which he stands to the object of his bounty, free from any delusion or the effect of disease which might lead him to dispose of his property otherwise than he would if he knew and understood what he was doing. This became the law of the case by reason of the fact it was given without objection. It is the best exposition of the law we were able to find, and has been approved by the courts wherever it has been given. (*Whitney* v. *Twombly*, 136 Mass. 145; *Estate of Motz*,

136 Cal. 558, 69 Pac. 294; *In re Ross' Estate,* 173 Cal. 178, 159 Pac. 603.)

The court did not err in awarding plaintiffs their costs against defendants.

Under our statutes, the plaintiffs are of right entitled to a judgment for their costs against all defendants, and upon the coming in of the account of the executors they will be allowed, in the proper discretion of the court, their proper expenses out of the assets of the estate as justice may require under the provisions of section 7718, Revised Codes.

MR. JUSTICE REYNOLDS delivered the opinion of the court.

This action was brought to contest the validity of the alleged last will and testament of Joseph T. Carroll, deceased. Deceased left surviving him one brother and five nephews and nieces, children of a deceased brother and sister. The will was made October 24, 1917, in which all the estate was disposed of to friends of deceased, as follows: $2,000 to L. A. King and Maude H. King, his wife, and the balance in equal shares to George B. Winston and D. J. Fitzgerald. The will contained this clause: ''I desire no part whatever of my estate to go to any relative of mine.'' The will was admitted to probate and within a year thereafter three separate petitions contesting same were filed. These contests were combined and thereafter tried as one. The petitions contesting the will were based upon charges of improper attestation, undue influence and mental incompetency. The case was tried to a jury and upon the trial, the court, by instructions, eliminated every question except the one as to mental capacity. The jury rendered a special verdict finding that the deceased was not competent to make a last will and testament at the time of signing the instrument offered for probate as his will. Judgment was thereupon entered decreeing that the instrument theretofore admitted to probate was invalid and that the probate thereof be annulled and revoked. Motion was made for new trial, which

motion was overruled. Appeal is from the judgment and from the order overruling motion for a new trial.

The questions involved upon this appeal relate to the rulings of the court in giving and refusing instructions, in overruling motion of defendants for directed verdict, and in taxing costs personally against the executors and beneficiaries named in the will.

The court, over objection, gave to the jury the following [1] instruction: "You are instructed that a person may be mentally incompetent to make a will and yet not be an insane person." It is contended by defendants that it is impossible for a person to be mentally incompetent and not be insane; that a person is either sane or insane; that unsoundness of mind is the lack of sanity and is insanity and that so far as testamentary incapacity is concerned, the words "insane," "nonsane" and "unsound" are synonymous. In considering the question as to whether or not a person has sufficient mental capacity to execute a will or any other instrument, the issue is drawn too closely if it is made to depend upon whether or not the one executing the instrument is sane or insane. Unsoundness of mind sufficient to incapacitate a person from transacting business may exist and still the person be not insane. Such incapacity may result from any condition whereby for the time the mind becomes weakened or incapable of functioning in the normal way and with the judgment of a mature person. A child may be incompetent by reason of immaturity. An adult may be incompetent by reason of the feebleness of old age, the delirium of illness, the temporary results of intoxication and a number of other conditions which are recognized as sufficient to destroy the mental capacity of the individual to conduct his usual business affairs; yet in none of these cases above mentioned can it be said that the person is necessarily insane. This court had this same question under consideration in connection with the appointment of a guardian of an incompetent person in the case of *State ex rel. Carroll v. District Court,* 50 Mont. 428, 147 Pac. 612, in which the

court used the following language: "None of the terms 'maniac,' 'idiot' or 'insane' can be used interchangeably with 'mentally incompetent.' While a maniac, an idiot or an insane person is a mentally incompetent person, the reverse is not true at all. A person may be mentally incompetent within the meaning of sections 7764 and 7767 [Revised Codes] and yet be neither a maniac, an idiot nor an insane person." In our opinion, the word "incompetent," when applied to an individual's incapacity to make a will, should be construed to apply to any person who, whether insane or not, is, by reason of immaturity, old age, disease, weakness of mind or from any other cause, unable to understand what property he has, the relationship that he bears to those who would naturally be the objects of his bounty and what disposition he may be making of his property at the time. The instruction objected to was proper and the court committed no error in giving it.

Defendants requested the court to give to the jury several [2] instructions embodying the principle that a testator has the right to disinherit his relatives. There can be no question but that the rule contended for is correct and that any person who has the capacity to make a will has the right to [3] disinherit his relatives; but from a review of the several instructions offered by defendants, we are satisfied that each one of them has some objectionable feature. In each instance defendants have coupled with a statement of the rule above set forth some other instruction which was either incorrect in its statement of the law or such as would be confusing to the jury. Under these circumstances the court cannot be put in error for refusing the instructions which, although proper in part, were also improper in part.

Exception was also taken to the giving by the court of certain instructions offered by defendants with modifications made by the court. We are satisfied that in each case the modification of which complaint is made was proper, and that defendants did not suffer any prejudice thereby.

Defendants requested other instructions, which were refused, but there was no error in such refusal, as all of these offered instructions were covered by other instructions given.

The motion of defendants for directed verdict involves the [4] question whether or not there was sufficient evidence of incompetency of testator to justify the court in submitting the case to the jury. It has been held by this court in numerous cases that it is the duty of the trial court to submit the 'case to the jury if there is any substantial evidence to support plaintiff's case. (*Moran* v. *Ebey*, 39 Mon. 517, 104 Pac. 522; *Lehane* v. *Butte Elec. Ry. Co.*, 37 Mont. 564, 97 [5] Pac. 1038; *Ball* v. *Gussenhoven*, 29 Mont. 321, 74 Pac. 871.) In a case involving the contest of a will this court has also held that the verdict of the jury will not be disturbed if there is substantial evidence upon which the verdict may be sustained. (*Murphy* v. *Nett*, 47 Mont. 38, 130 Pac. 451.) The question in this case, then, is whether or not there was any substantial evidence upon which the court should have submitted the case to the jury.

The evidence discloses the fact that testator in his business [6] career was what is frequently called a "captain of industry." He was a manager of several large lumber concerns and engaged in large business enterprises. He was a thorough-going business man, associating with men of big caliber. In the latter part of his life he became addicted to the use of drugs and twice took treatment for the habit at the Insane Asylum at Warm Springs, the first time in March, 1916, when he was committed to the institution as an insane person, and the second time in April, 1917, when he went there voluntarily. The testimony is replete with the recital of acts of eccentricity in the last couple of years of his life, and particularly during the time immediately preceding and immediately following the execution of the will, when he was living at the Butte Hotel, including such actions as the following: He frequently would ring the call-bell in his room and then apparently be unable to tell what he wanted or forget that he wanted

anything; would take down the telephone, receiver and try to prevent anyone putting it back on the hook and yet complain because he could not get service. He drove his nurse out of the room at two different times and would not let her return; went into the public hall of the hotel in his night-clothes; used the toilet without lifting the lid and insisted on going back to bed without changing his soiled night-dress; took the air-valve off the steam radiator and said he was taking a Turkish bath; gave away various small items and then evidently forgot about it, and claimed that the parties to whom he gave them had stolen them from him. He repeated statements day after day to various parties as though the information was new and apparently forgetful of the fact that he had related the same narrative or made the same statement the day before. He commenced a suit in court against his brother William to recover money which he claimed that his brother was holding in trust for him, and in connection with that suit wrote a letter to his attorneys evidently designed to set forth facts necessary for them to intelligently handle the case but the letter was so long, occupying forty-two pages of the printed record, and went so much into detail respecting immaterial and insignificant things, entirely unrelated to the subject matter of the controversy, that the jury very naturally could interpret it as the ramblings of a weakened or diseased mind. Other letters of similar character were received in evidence. The foregoing are only a few of the many things that appear tending to show that he had delusions and that the actions of deceased were not those of a mentally normal man. Testimony was also given showing that such conduct was inconsistent with his natural disposition as shown when his mental condition was unquestionably good and when as a business man of broad experience, he had acquired the habit of being exact, precise and decided in his words and conduct. His condition at the very time the will was made was in dispute, but substantial evidence was given to show that at that time he was incompetent. Two of the witnesses testified that he was then in a semi-comatose

condition. Without question he was a very sick man at that
time, suffering from pneumonia from which he died six days
later. Mr. Howell, who drew the will, testified that deceased
told him that after making certain specific bequests, he desired
to give the balance of his estate to George B. Winston and
D. J. Fitzgerald in trust, but was unable to state the ob-
ject of the trust. After insistent inquiry on the part of Mr.
Howell to learn in whose favor the trust should be made, de-
ceased apparently in desperation, said to him: "Well, I will
leave it all to Mr. Fitzgerald and Judge Winston." Mr.
Howell also testified that it took the testator some time to come
to a decision as to just what he would do with the whole es-
tate. Mr. Howell went to the hotel expecting to secure the
data for making the will and then have it typewritten but that
by reason of the extremely weak condition of Mr. Carroll, he
went out, procured some ruled legal cap paper, came back and
drew the will immediately. Mr. Ahern, manager of the hotel,
testified that on one of the days shortly after the will was
made, deceased seemed to have forgotten that he had made a
will and stated that his affairs were in horrible shape.

The recitation of the foregoing evidence is sufficient to es-
tablish the fact that there was substantial evidence to the
effect that Joseph T. Carroll was incompetent to make a will
at the time he executed the instrument in question. No mat-
ter how strong or convincing the evidence of defendants was,
it is immaterial in disposing of this question, for the weight
of the evidence was for the determination of the jury and not
for the consideration of the court. As it is for this court
merely to determine whether or not there was substantial evi-
dence to go to the jury, we must conclude that the trial court
did not err in overruling defendants' motion for directed
verdict or denying motion for new trial.

The court refused to submit to the jury three special findings
[7] requested by defendants, to-wit: 1. "Was the mind and
memory of Joseph T. Carroll, on October 24, 1917, when the
will in controversy was made, sufficiently clear to enable him

to understand and comprehend the nature of the act?"
2. "Was the mind and memory of Joseph T. Carroll, on October
24, 1917, at the time the will in controversy was made, suffi-
ciently clear to enable him to know that he had a brother and
nephews and nieces and to remember who they severally
were?" 3. "Was the mind and memory of Joseph T. Carroll,
on October 24, 1917, at the time when the will in controversy
was made, sufficiently clear to enable him to remember that he
had property to bequeath and to know its approximate char-
acter and extent?"

The statute requires that in the hearing of a contest of a
will before a jury, "the jury, after hearing the case, must
return a special verdict upon the issues submitted to them by
the court; upon which the judgment of the court must be ren-
dered, either admitting the will to probate or rejecting it."
(Sec. 7399, Rev. Codes.) Under this statute the obligation
rested upon the court to submit such issues as would be neces-
sary for the proper disposition of the case. It did submit one
special interrogatory reading as follows: "Was the deceased,
Joseph T. Carroll, competent to make a last will and testament
at the time of signing the instrument offered for probate as
his will?" It was discretionary with the court as to the num-
ber and form of the interrogatories to be submitted so long as
such interrogatories were sufficient to comprehend the issues
involved in the case. In addition to the submission of the in-
terrogatory above mentioned, the court fully instructed the
jury as to what constitutes competency to make a last will and
testament in the following words: "You are instructed that if
a person is able to understand and carry in mind the nature
and situation of his property and his relation to his relatives
and those around him, with clear remembrance as to those in
whom and those things in which he has been mostly interested,
capable of understanding the act he is doing, and the relation
in which he stands to the objects of his bounty, free from any
delusion or the effect of disease which might lead him to dis-
pose of his property otherwise than he would if he knew and

understood what he was doing, he has the capacity to make his will." The interrogatory submitted for a special verdict, together with the instruction given as above mentioned, covered in substance all that was included within the special findings requested by defendants, and it was discretionary with the court as to whether or not such special findings so requested should be submitted to the jury. In view of the special interrogatory submitted and the instructions given, we think that this feature of the case was well and thoroughly covered and that there was not any abuse of discretion in the refusal of the court to submit to the jury the special findings requested.

In the judgment entered, plaintiffs' costs were allowed [8] against the executors and the beneficiaries named in the will. Appellants contend that the allowance of costs in favor of plaintiffs against defendants personally was an abuse of discretion. The statute relative to costs upon contest of a will after probate provides: "If the probate is revoked, the costs must be paid by the party who resisted the revocation or out of the property of the decedent, as the court directs." (Sec. 7412, Rev. Codes.) Under this statute a discretion is lodged in the trial court as to the imposition of costs. It evidently was the intention of the legislature that if the revocation of the probate of the will is resisted in good faith and upon substantial grounds, the costs should be paid out of the property of the decedent, but if the resistance to the revocation of the will is in bad faith without justification and without any substantial grounds, the costs should be taxed against the party who resisted the revocation. This is the general rule that has obtained heretofore in such cases. The reason of the rule is apparent. The duty rests upon the executor named in the will to defend it unless it appears that the defense of the will would be fruitless and that a defense cannot be made upon substantial grounds. If the executor of the will is to suffer the penalty of having the costs taxed against him in case he should fail in sustaining it, the executor, out of regard for his

personal interest, would probably refuse to assume the risk of being obliged to pay the costs of the contest, no defense or an insufficient defense would be made and the desires of the testator be defeated.

In our opinion there can be no question but that the executors in this case would have been remiss in the performance of their duty if they had not made a defense against the attack upon the will in question. The record discloses substantial evidence that deceased was competent at the time of the execution of the will, so substantial, in fact, that appellants have contended in this court that it was so overwhelmingly in favor of the competency of the deceased that this court should set aside the verdict of the jury. This will was evidently defended in good faith with ample justification for such defense. Under these circumstances it is an abuse of discretion to tax the costs against the executors and beneficiaries individually and such costs should be paid out of the property of the estate.

The motion hereinbefore interposed for the dismissal of the appeal is hereby denied. The order overruling motion for new trial is affirmed, the cause is remanded to the district court with directions to modify the judgment by taxing the costs in the district court against the property of the estate, and as so modified the judgment will stand affirmed. Each party shall pay his own costs in this court, except the expense of preparing and printing transcript, which shall be equally divided between appellants and the estate.

*Modified and affirmed.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES COOPER, HOLLOWAY and GALEN concur.