Phoebe Benolken, a widow, died testate, leaving surviving her seven heirs at law. Five children, all adults, and two grandchildren, both minors, constitute her heirs. The grandchildren, appellants herein, are the issue of a predeceased son of testatrix.
The will of testatrix was admitted to probate — the estate was settled and decree of distribution was entered.
The decree distributes one dollar to each of the grandchildren and the rest, residue and remainder of the estate, consisting of both real and personal property situate in Park County, Montana, in equal shares, to the three surviving children of testatrix mentioned and provided for in the third clause of her will. This is an appeal by the two grandchildren from such decree.
Had there been no will the estate would have been distributed pursuant to the provisions of subdivision 1 of section 7073, Rev. Codes of Montana of 1935, which reads:
"If the decedent leaves no surviving husband or wife, but leaves issue, the whole estate goes to such issue; and if such issue consists of more than one child living, or one child living, and the *Page 427 
lawful issue of one or more deceased children, then the estate goes in equal shares to the children living, or to the child living, and the issue of the deceased child or children by right of representation."
Appellants contend they are entitled to inherit under section 7073, supra, in spite of the will, claiming that they come within the provisions of section 7009, R.C.M. 1935, which provides: "When any testator omits to provide in his will for any of his children, or for the issue of any deceased child, unless it appears that such omission was intentional, such child or the issue of such child, must have the same share in the estate of the testator as if he had died intestate, and succeeds thereto as provided in the preceding section."
Clearly section 7009, supra, can have no application unless it appears from the will that testatrix unintentionally omitted to provide in her will for appellants.
The sole question is: Did testatrix unintentionally omit to provide in her will for her two appellant grandchildren?
The material portions of the will upon the point in issue are the second, third and fourth clauses thereof which read:
"Second. I hereby give and bequeath unto each of my heirs-at-law not elsewhere herein mentioned or provided for, the sum of One Dollar ($1.00).
"Third. I hereby give, bequeath and devise unto my children, Viola Johnson, Phoebe Montier and James Benolken, all the rest, residue and remainder of my property and estate, both real and personal, or to such of my said children as shall survive me, they to share equally therein, share and share alike.
"Fourth. I intentionally omit any bequest or devise to my sons, Leo Benolken and George Benolken."
The foregoing provisions of the will are concise, clear and distinct and evidence that the scrivener who drafted them has used accurate legal phraseology which manifests familiarity with legal terms in common use and with the statutes and principles applicable to testamentary dispositions in this jurisdiction.
In her will the testatrix was privileged to describe her beneficiaries *Page 428 [1] (1) by their relationship to herself or some other designated individual, or (2) by certain qualities or characteristics, or (3) she could designate them by name. 3 Page on Wills, sec. 1006, p. 109.
Had there been no will her estate would have gone to her seven heirs at law, namely: to her five living children and to the issue of her deceased son, being the appellant grandchildren.
In the fourth clause of her will the testatrix mentioned her[2] sons Leo and George, but "intentionally" gave them nothing. This was her right for any person who has the capacity to make a will has the right to disinherit any or all of his children. In re Carroll's Estate, 59 Mont. 403, 410,196 P. 996.
The law is as stated in In Re Eatley's Will, 82 N.J. Eq. 591,89 A. 776, 779, wherein the court said: "It may be harsh and severe, it may be extremely cruel under some circumstances, to disinherit one child and to bestow the whole estate upon another, but if the testator be of disposing mind and memory, and duly execute such will in the forms prescribed by law, no court can interfere."
In the third clause of her will the testatrix mentioned and provided for her daughters, Viola and Phoebe, and for her son, James.
Having thus mentioned in the third and fourth clauses of her will her five living children, the testatrix thereby excluded each and all of her surviving children from taking or participating in any bequest provided for in the second clause of her will. Thereby was such clause rendered applicable only to her two heirs at law not elsewhere mentioned in her will being the two appellant grandchildren, Mary Lois Benolken and John Francis Benolken, Jr., they being the issue of Francis Benolken, the deceased son of testatrix.
It thus clearly appears from the will that at the time of its execution the testatrix distinctly had in mind each of her seven heirs at law, two of whom she mentioned in the fourth clause, three of whom she mentioned and provided for in the third clause *Page 429 
and the remaining two of whom she provided for in the second clause of her will.
It follows that since the appellants are the only "heirs-at-law not elsewhere * * * mentioned and provided for" in the will that they alone are designated and that they alone may have distributed to them and take the gifts and bequests provided for by testatrix in the second clause of the will. Such clause applies solely to the appellants. Therein is expressed the will of their grandmother as to the extent they may share or participate in her estate. Therein testatrix made such gift and bequest to appellants as she intended they should take. Any other construction would render the provisions of the second clause meaningless and would entirely defeat the expressed intention of testatrix that appellants should each receive the amount therein specified and bequeathed and no other part or share of her estate. "The words of a will are to receive an interpretation which will give to every expression some effect, rather than one which will render any of the expressions inoperative." Section 7024, R.C.M. 1935.
There is no omission to provide for appellants. Each is expressly provided for in the second clause of the will. The provision is that unto each is given and bequeathed the sum of one dollar.
"Heirs," "heirs-at-law," and "legal heirs" are in a legal[3] sense the same. In re Fahnestock's Estate, 384 Ill. 26,50 N.E.2d 733, 736; Starrett v. Botsford, 64 R.I. 1,9 A.2d 871; In re Bowen's Estate, 139 Pa. Super. 523, 12 A.2d 507. These are technical words with a fixed legal meaning, Lydick v. Tate, 380 Ill. 616, 44 N.E.2d 583, 592, 145 A.L.R. 1216; Leeper v. Leeper, 347 Mo. 442, 147 S.W.2d 660, 133 A.L.R. 586; Little v. Ireland, D.C., 30 F. Supp. 653, and, when used in a will "are to be taken in their technical sense, unless the context clearly indicates a contrary intention." Section 7026, R.C.M. 1935.
In Bottomly v. Meagher County, 114 Mont. 220, 229, 133 P.2d 770, 775, this court said: "However the word `heirs' is a *Page 430 
legal term expressing relation of persons to a deceased person [citing cases] and an heir is one entitled under the law to succeed to property by right of relationship or descent [citing cases]." Also see sections 7033 and 7034, R.C.M. 1935.
The words "my heirs-at-law" as used by Phoebe Benolken in the[4] second clause of her will are words of donation, section 7034, R.C.M. 1935, expressing a gift, — a gratuitous transfer of property from one to another. United Brotherhood of Carpenters and Joiners v. Rogers, 165 Okla. 131, 25 P.2d 57; Chouteau v. City of St. Louis, 331 Mo. 1206, 56 S.W.2d 1050. The law does not require that testatrix give anything to any of her children or grandchildren. She had the right to give any of them as little or as much as she pleased and she was also privileged to disinherit any or all of them. In re Carroll's Estate, supra. Neither does the law require that testatrix, in her will, designate appellants or any other of her heirs at law by name. This is but one of three approved modes available for describing beneficiaries in a will. 3 Page on Wills, sec. 1006, p. 109.
Had the children, Viola, Phoebe or James, mentioned and provided for in the third clause, predeceased testatrix and left surviving issue, the latter, as heirs at law of testatrix not elsewhere mentioned or provided for in the will, would have taken under the second clause of the will and not under sections 7073 and 7009, R.C.M., supra.
It is axiomatic that no one is an heir at law to the living.[5] In re Munger, Sup., 22 N.Y.S.2d 187, 192; Moore v. Segars, 192 Ga. 190, 14 S.E.2d 752; Whitley v. Arenson,219 N.C. 121, 12 S.E.2d 906; In re Bartlett's Will, Sur., 76 N.Y.S.2d 247, 254; Templeman v. McFerrin, Tex. Civ. App. 1908, 113 S.W. 333; Gerard v. Beecher, 80 Conn. 363, 68 A. 438, 15 L.R.A., N.S., 900; Westcott v. Meeker, 144 Iowa 311,122 N.W. 964, 29 L.R.A., N.S., 947.
A living person has only "heirs apparent" or "heirs presumptive." It is only when death removed testatrix from the scene of action that her heirs at law could be determined under the Code provisions on succession in force at the time of her *Page 431 
death. Secs. 7033 and 7073, R.C.M. 1935. Since Viola, Phoebe and James survived testatrix, they — not their issue — became heirs at law of decedent. At the time she executed her will, testatrix was a widow of the age of 68 years. She then definitely knew each child she had borne or that she was likely to bear but she had no means of knowing which, if any, of her children, would survive her. Should any of her five children living at the time she made her will predecease her, testatrix had no means of knowing which, if any, of the issue of such predeceased child or children, would be living at the time she should cross the Great Divide. Accordingly, in her will, testatrix mentioned, by name, each of her children living at the time she executed the will. Unable, however, to know when death should lay hand upon her or who, at that fatal moment, would be her heirs at law, she did not mention such undetermined persons, by name, but, instead she described them by their relationship to her as was and is perfectly proper. It was to provide for such contingencies that testatrix, with the aid of a farsighted, careful and skillful scrivener, incorporated in her will the provisions set forth in the second clause thereof, couching the provision in accurate and well understood legal phraseology generally employed by those versed in the law to accomplish such purpose.
Thus did Phoebe Benolken, in her will, made two years before her demise, provide for the issue of her deceased son, Francis, and for the issue of any other child or children who should predecease her. The "grandchildren clause" of the will is the second clause. Because she therein provided for all her grandchildren, who, at her death, should be determined to be her heirs at law, she did not again provide for them in the third clause nor did she further mention or describe them in the fourth clause.
It is well settled that a gift to the "heirs-at-law" of a[6] person determines the persons who are to take, the Code provisions on succession being, in effect, read into the will. Tyler v. City Bank Farmers Trust Co., 314 Mass. 528,50 N.E.2d 778, 780, and authorities there cited. Meily v. Meily,147 Pa. Super. 140, 24 A.2d 25, 28; Hogate v. Hogate, 132 N.J. Eq. 480, *Page 432 28 A.2d 769, 772; Whitehead v. McCoy, 133 N.J. Eq. 1,29 A.2d 729.
The common law rule as to the rights of children or of the issue of a deceased child for whom the testator omits to provide has been altered or abrogated in most states by statute. Such statutes ordinarily may be grouped in one or the other of two general classes, namely: (1) the so-called "Massachusetts type" statute, or (2) the so-called "Missouri type" statute. See annotations in 152 A.L.R. 723-741, and in particular subdivision "IV. Reference to `heirs'," pp. 732-737. Also see 65 A.L.R. 472-488.
Section 7009, Rev. Codes of Montana of 1935, is identical with and adopted from section 1307 of the California Civil Code, approved March 21, 1872, the Montana statute having been enacted as section 1752 of the Civil Code of 1895. The statute is of the "Massachusetts type" and in our opinion has received proper judicial construction in the cases of: In re Estate of Hassel,168 Cal. 287, 142 P. 838, decided in 1914; In re Estate of Lindsay, 176 Cal. 238, 168 P. 113, decided in 1917; In re Estate of Minear, 180 Cal. 239, 180 P. 535, decided in 1919; and In re Estate of Trickett, 197 Cal. 20, 239 P. 406, a leading case decided in 1925.
In 1931 section 1307 of the California Civil Code was amended and became section 90 of the California Probate Code. The new section 90 added the words "from the will" after the word "appears" so as to provide "unless it appears from the will that such omission was intentional." In re Price's Estate, 56 Cal.App.2d 335,132 P.2d 485, 486, was decided in 1942 under the new statute, sec. 90 of the Cal. Probate Code. The will there construed made no gift or bequest to "heirs," "heirs-at-law" or "next of kin" nor do such technical words of donation appear therein. Compare sections 7033 and 7034, R.C.M. 1935. Instead of giving the sum of one dollar unto each of her heirs at law not otherwise mentioned, as did Mrs. Benolken, the testatrix, Mrs. Price, gave such sum to such persons as "shall * * * contest" her will, which instrument provides for the two surviving *Page 433 
children of testatrix but omitted to either provide for or mention her two grandchildren, the issue of a predeceased son. As to the grandchildren so omitted the court held the will to be a mere blank, the opinion reciting inter alia:
"The will of Mrs. Price contained these two clauses which are all that is material to the controversy: `I give, devise and bequeath to my two sons, Arthur Benjamin Price and Walter William Price, all of my property, real, personal and mixed and wheresoever situate, to be divided between them at my death, share and share alike.
"`I purposely refrain from leaving anything by this my last will and testament to any other person or persons, and in the event that any other person or persons shall either directly or indirectly contest this my last will and testament I give to any such person or persons contesting said will the sum of $1 and no more, hereby declaring that I have only at this date two surviving children, to wit: my said two sons above named.' * * *
"The grandchildren are not mentioned and nothing is contained therein which would indicate that the testatrix had them in mind when the will was executed. The language excluding `any other person or persons' is the same as that found in the Hargadine case which we have just referred to [Hargadine v. Pulte,27 Mo. 423]. The clause as a whole is the ordinary `no contest' clause which is designed to prevent a contest of a will which frequently brings to life the private life and conduct of the decedent. That this is what the testatrix had in mind when she referred to `any other person or persons' is made clear by the language following where she gave to `such person or persons contesting said will' the sum of one dollar. Now it is settled law that a pretermitted heir seeking his interest under this section of the code is not a contestant and does not contest the will. His rights vest absolutely upon the death of the testator and, so far as his particular interest is concerned, there is no will."
In the instant case the testatrix Benolken accurately and intelligently used the commonly accepted technical words of donation "my heirs-at-law not elsewhere herein mentioned or provided *Page 434 
for" to describe her two grandchildren by designating their relationship to her, they being the only two of her "heirs-at-law" not elsewhere mentioned and the only heirs to whom her description and designation applied. While Price's Estate, supra, is thus readily distinguishable from the case at bar, yet it cites the earlier California decisions construing section 1307 of the California Civil Code and voices no criticism whatever of such decisions.
Appellants place much reliance on the old case of Boman v. Boman, 9 Cir., 49 F. 329, 330, decided in 1892, which construes sections 1325 and 1326 of the Code of Washington, being statutes of the "Missouri type" and not of the "Massachusetts type" to which latter class the Montana and California statutes belong. In his opinion in the Boman case, supra, District Judge Hawley wrote: "How should section 1325 be construed? This provision is identical with the statutes of Missouri and of Oregon, and we must therefore look to the decisions of these states to ascertain its proper judicial construction."
By the same token counsel as well as the members this court may well look to the decisions of California construing the statute of that state identical with section 7009, R.C.M., rather than fall into error and be misled by decisions of other courts construing not only different statutes but interpreting statutes of a wholly different type.
The California courts in the Estate of Lindsay, supra, and again in the more recent case of In re Allmaras' Estate, 24 Cal.App.2d 457,75 P.2d 557, 559, expressly held that the decision of Boman v. Boman, supra, cannot be taken as authority in that jurisdiction, and we here hold that the Boman case, supra, cannot be taken as authority in this state.
In re Harper's Estate, 168 Wn. 98, 10 P.2d 991, 15 P.2d 1119, decided in 1932, construed the Washington statute and the court there held that the word "heirs" used in testator's will was broad enough to include testator's daughter and that as there employed, showed that her father, at the time he executed his will, must have had her in mind. The court *Page 435 
there quoted with approval from its own case of Gehlen v. Gehlen,77 Wn. 17, 137 P. 312, and from the California case of In re Hassell's Estate, supra, and cited the California cases of In re Lindsay's Estate, supra, and In re Kurtz's Estate, 190 Cal. 146,210 P. 959. The opinion of the Washington court further states [168 Wn. 98, 10 P.2d 993]: "The Supreme Court of California has repeatedly held that reference in a will to heirs included children, and was sufficient to satisfy the requirements of the statute and work their disinheritance."
The words "omits to provide" for any children or for the issue[7] of any deceased child as used in section 7009, R.C.M. 1935, mean simply an omission to make a provision in the will and have no reference to the pecuniary value of the provision. In re Callaghan's Estate, 119 Cal. 571, 51 P. 860, 39 L.R.A. 689; Provident Savings Bank Trust Co. v. Nash, 75 Ohio App. 493,62 N.E.2d 736.
Any provision which affords evidence that the child or the[8] issue of any deceased child had not been forgotten is sufficient to prevent the application of the statute which was not intended to produce equality or to diminish the power of the testator but merely to call for the exercise of the power indicating the testator's intention with respect to the share, if any, which he desires his child or children, or the issue of any deceased child, to have or take in his estate. Compare: Allison v. Allison's Executors, 101 Va. 537, 44 S.E. 904, 917, 63 L.R.A. 920.
The legislative purpose in enacting section 7009, R.C.M. 1935,[9] was not to restrict the testatrix or to dictate to her what provisions she should make. It is not to control her intention but to provide for her children and the issue of any deceased child in the event of her forgetfulness or oversight upon the presumption that if she had thought of them she would have intended that they should have some share in her estate and that share the law of succession would then fix. Sec. 7073, R.C.M. 1935. However, the power of the testatrix to decide whether anything, and, if so, how much, and in what form, should be given to her children or to the issue of any deceased child, is as *Page 436 
uncontrolled as if there were no statute on the subject, and where, as here, it is apparent that the testatrix was not forgetful, — that she not only had the issue of her deceased son Francis in mind, but that she satisfied the statute by making for them some provision, — we do not conceive it the purpose of the statute nor the province of the court to say that Phoebe Benolken's will shall not govern, or to say that not only must she make some provision for the issue of her deceased son as the statute requires and which she clearly made, but that she must make such provision, as, in the opinion of the court, is adequate, or that she must make provision in a particular form. Such construction would write into the statute words and purposes not appearing therein and would infringe upon the freedom of will in disposing of property and distributing estates. Both in the construction of the statute and the will, "the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all." Section 10519, R.C.M. 1935. Compare In re Donges' Estate, 103 Wis. 497, 79 N.W. 786, 74 Am. St. Rep. 885; Allison v. Allison's Executors, supra.
As is aptly said in Re White's Estate, 129 N.J. Eq. 566,20 A.2d 442, 444: "The mere fact that the grandchildren might have had some reasonable expectation that they might receive a larger share of the estate, or the fact that the will might seem to be unjust or unfair, does not invalidate it. If the courts were to substitute their judgment of what a testator should do for his own wish, the opinion of the court would be substituted for that of the testator in every case, and the power to make a will would be abolished."
The presumption is that where a testator makes a will he intends to dispose of his whole estate, and if possible the will should be so interpreted as to avoid total or partial intestacy. In re Spriggs' Estate, 70 Mont. 272, 274, 225 P. 617. There is a presumption against intestacy and indefinite language in a will *Page 437 
is aided by this presumption. The will of Phoebe Benolken makes a well defined and specific disposition by testatrix of her whole estate. "The courts may not allow her will to be defeated and render her intestate by rewriting the law of wills or by resorting to highly technical construction of technical words which construction is at variance with the statutory, (secs. 7033, 7034 and 7027, R.C.M.) and generally accepted, (Bottomly v. Meagher County, supra) definition of such words."
No natural sympathy for the two sons who take nothing or for the two grandchildren who were given but one dollar each can be allowed to defeat the clearly expressed intention and will of testatrix. We must not forget that testatrix had a right to dispose of her estate as she pleased. We should not try to change her will, even if distribution of the estate should appear to be inequitable. It was Phoebe Benolken's property and estate. It was her will. The will is carefully drawn and valid. The courts are without right to delete from the instrument the second clause or any provision thereof. The courts may not lawfully write and publish for the dead woman a different will than she saw fit to make. The will provides for appellants the sums testatrix intended and willed they should have. It is the plain duty of the courts to uphold and give effect to the will.
The research occasioned, — the authorities reviewed, — the opinion pronounced, determine this simple fact, namely: When a testatrix, leaving but seven heirs, mentions five of them by name in her will and therein provides for a gift unto each of the two remaining heirs not so mentioned, her will is good and valid and not subject to attack on the grounds that it "omits to provide for" such last mentioned two beneficiaries.
The decree distributes unto each appellant heir the sum bequeathed to each. It conforms with the provisions of the will and the intention of the testatrix and such decree is affirmed.
Associate Justices Metcalf and Bottomly concur.