In the Matter of the ESTATE OF MABELLE LILLIAN JONES, Deceased.

No. 10969.

Submitted November 5, 1965. Decided December 7, 1965.

408 P.2d 482.

440

Cure & Borer, Edward W. Borer, Great Falls (argued), for appellant.

James, Crotty & Corontzos, George Robert Crotty, Great Falls (argued), for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from an order of distribution of the estate of one Mabelle Lillian Jones, and an order denying distribution to the objector adopted daughter, appellant herein.

On April 14, 1963, Mrs. Jones died testate being survived by appellant, her adopted daughter, Claire Greening, and a number of brothers, sisters, nieces and nephews. In her will, the testatrix designated her brother, Allen Payge Wyman, executor, and made specific bequests to him and other named individuals. The residue of the estate was divided between Wyman and two nieces. The will also contained an exclusionary clause which read:

"EIGHTH: I have intentionally omitted from this, my last will and testament, the names of any other heirs that I may now have or may have at the time of my death."

The will was admitted to probate on May 1, 1963. Upon the named executor filing his petition for distribution the appellant objected, and moved for distribution to her as allowed under section 91-136, R.C.M.1947. The section reads:

"When any testator omits to provide in his will for any of his children, or for the issue of any deceased child, unless it appears that such omission was intentional, such child or the issue of such child, must have the same share in the estate of the testator as if he had died intestate * * *."

The appellant's motion was denied. A later motion to "amend findings of fact, conclusions of law and judgment" was also denied, and this appeal followed.

The record revealed Claire Greening to have been born May 2, 1926, and that she went to live with Mr. and Mrs. Jones

probably some time in 1937. There appears to be conflict as to the exact time. On June 30, 1937, however, Claire was adopted by Mr. and Mrs. Jones in whose family she remained until 1941. In 1941, after an argument, she was removed to her grandmother's house. No reason for the family dissolvement was indicated.

Mrs. Greening never returned to live with Mr. and Mrs. Jones after the incident, although periodically she sent cards, and on two occasions took her children to visit the old home. It appeared Mrs. Jones recognized Claire when she made her infrequent visits, but did not maintain a very "motherly" attitude towards her.

The record further indicates the testatrix had consulted an attorney before the will was drawn. At the hearing when respondent tried to examine the attorney, Mr. Larsen, as to the testatrix's intent at the time of drafting, the court sustained an objection by appellant. However, there was testimony as follows:

"THE COURT: I have one more of Mr. Larsen, and you are still under oath. You indicated the subject matter of the objector here arose pursuant to your conversations with the decedent at the time you drew the will?

"MR. LARSEN: Yes, that's right.

       *      *      *      *      *      *      *      *      *

"THE COURT: What action did you do in furtherance of the discussion of that subject matter; what was your action as a result of that discussion?

"THE WITNESS: Just the drafting of the will. There wasn't any further action on my part.

"THE COURT: The drafting of the will in general?

"THE WITNESS: (No response).

"THE COURT: As a result of that specific subject matter, what act did you perform?

"THE WITNESS: Well, the preparation of the will in accordance with her discussions.

"THE COURT: All right. Do you have any objection?

"MR. CURE: No. * * *

"THE COURT: * * * Did you specifically draw the eighth paragraph as a result of a conversation with the decedent in connection with the objector?

"MR. CURE: We make the same objection we have made heretofore.

"THE WITNESS: This was drawn—

"MR. CURE: To which we object, it may be answered 'yes' or 'no.'

"THE COURT: Objection overruled. It can be answered 'yes' or 'no.'

"THE WITNESS: I guess it was more yes than no. Yes. * * *

"MR. CROTTY: Was he aware that the deceased, Mabelle Lillian Jones, was aware of the existence of this protestant on that date?

"MR. CURE: Our objection is that it calls for a double conclusion.

"THE COURT: I think if you ask the question, 'Did you know,' know that the reference to the protestant was the protestant herself, did you know that, I think the question may be proper.

"MR. LARSEN: Do you want me to answer that question, Judge?

"THE COURT: I think I would want to know the answer.

"MR. CURE: To that question we would object for the reasons I have heretofore given, and for the further reason that it is purely and simply a conclusion from this witness.

"THE COURT: I think it is a matter of identity.

"MR. CURE: He has already testified he wasn't aware that Mrs. Jones had a child.

"THE COURT: That's a different question. You may answer.

"THE WITNESS: Well, yes. I did know of the existence of the protestant at the time the will was drawn.

"MR. CROTTY: That wasn't the question, was it? It was, was Mrs. Jones aware of the existence of the protestant?

"THE COURT: No, I asked if he was aware of it. If he knew from the conversation he had that the protestant was, in fact the child was, in fact, this protestant?

"THE WITNESS: I knew of the protestant as an individual, but not as a daughter.

"THE COURT: All right.

"MR. CURE: When was the first time that you ever heard of the protestant's name?

"THE WITNESS: As Greening, not until these proceedings.

"MR. CURE: She has a first name, also?

"THE WITNESS: Yes. I heard her call—

"MR. CURE: I said when?

"THE WITNESS: By Mrs. Jones—

"MR. CURE: The question was when?

"THE WITNESS: As I say, Mrs. Jones told me of her when she asked the will to be drawn.

"MR. CURE: The question is when?

"THE COURT: That is subject to be stricken.

"MR. CURE: I would like to have the question answered. When was the first time that you heard the protestant's name?

"THE WITNESS: Well, would you clarify that as to the full name, or merely the first name?

"MR. CROTTY: He went through the last name part, and he's asking the first name now.

"MR. CURE: Yes, when?

"THE WITNESS: When Mrs. Jones consulted with me about the preparation of the will.

"MR. CURE: You were aware of her name at that time, at the time you prepared the will?

"THE WITNESS: Not her full name, merely—

"MR. CURE: The first name?

"THE WITNESS: Right.

"MR. CURE: That's all."

Five specifications of error were set forth in appellant's brief, which will be consolidated into two general statements of error in the following opinion.

The first question is whether the lower court erred in allowing distribution of the estate pursuant to the terms of the will?

It is well-settled law in this state that an adopted child is entitled to inherit from its adoptive parent as if he were their natural born child. Section 61-212, R.C.M.1947; In re Pepin's Estate, 53 Mont. 240, 163 P. 104 (1917). It is also the law that any person "who has the capacity to make a will has the right to disinherit his relatives * * *." In re Carroll's Estate, 59 Mont. 403, 410, 196 P. 996, 997 (1921). As was noted in In re Benolken's Estate, 122 Mont. 425, 428, 205 P.2d 1141 (1949), wherein the court quoted from In re Eatley's Will, 82 N.J.Eq. 591, 89 A. 776, 779, " 'It may be harsh and severe, it may be extremely cruel under some circumstances, to disinherit one child and to bestow the whole estate upon another, but if the testator be of disposing mind and memory, and duly execute such will in the forms prescribed by law, no court can interfere.' " In referring to the duty of the court, Justice Adair in the Benolken case, supra, cited what is now section 93-401-15, R.C.M.1947, which reads: "In the construction of a statute or instrument, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions, or particulars, such a construction is, if possible, to be adopted as will give effect to all."

It is this court's opinion, in the light of section 93-401-15, R.C.M.1947, and the Benolken decision, supra, that the appellant had a just hearing; and that distribution pursuant to the will was correct.

When a statute such as section 91-136, R.C.M.1947, is brought into effect it is the rule that it may have no application unless it appears from the will the testatrix uninten-

tionally omitted the objector. In re Benolken's Estate, supra. In most instances, testimony, *dehors* the will, will be allowed to establish whether the omission was intentional, In re Estate of Peterson, 49 Mont. 96, 140 P. 237 (1914), or unintentional, In re Torregano's Estate, 54 Cal.2d 234, 5 Cal.Rptr. 137, 352 P.2d 505, 88 A.L.R.2d 597 (1960). (The California cases in the past have not allowed extrinsic evidence in construing their pretermitted heir statute because the words "unless it appears *from the will* that such omission was intentional" are used. (Emphasis supplied.) However, in the Torregano case, supra, the court got around the problem by declaring extrinsic evidence will be allowed in order to prove *lack* of intent to omit.) It is this court's feeling that extrinsic evidence should have been allowed in the present case. See Anno. 88 A.L.R.2d 616 (1963), and In re Estate of Peterson, supra.

At trial strenuous objection by the appellant resulted in no extrinsic evidence being admitted, thereby making it impossible to determine whether the testatrix unintentionally or intentionally omitted the objector. In viewing the evidence, the lower court felt, as we do, that due to paragraph eight, and the strained family relations, the testatrix had no intention of including her adopted daughter in her will. As a result no extrinsic evidence was, perhaps, needed. The desired disinheritance was made plain on the face of the will.

The contention that Mrs. Jones meant what she said by paragraph eight is further supported by our statutes. Section 91-210, R.C.M.1947, makes it clear that when there are "two modes of interpreting a will, that is to be preferred which will prevent a total intestacy." And, section 91-209 requires a will to be interpreted in the way "which will give to every expression some effect, rather than one which will render any of the expressions inoperative." Intestacy in whole or in part has always been avoided, if possible, by this court. In re Hauge's Estate, 92 Mont. 36, 9 P.2d 1065 (1961).

The word "heirs" as used in paragraph eight included the

appellant. In 4 Page on Wills, § 34.1, p. 401 (1961), and the Benolken case, supra, 122 Mont. at 428, 205 P.2d 1141, there is authority to the effect that a beneficiary may be designated: (1) by the relationship to the testatrix; (2) by certain qualities or characteristics; or (3) by name. In the case of Bottomly v. Meagher County, 114 Mont. 220, 229, 133 P.2d 770, 775 (1943), the word "heirs" was appropriately interpreted to be "a legal term expressing relation of person to a deceased person [Citing cases.] and an heir is one entitled under the law to succeed to property by right of relationship or descent [Citing cases.]."

It is obvious, therefore, if only the usual meaning of "heirs" was used in construing paragraph eight, the appellant would have to be included. Further, there would be no reason to have included paragraph eight in the will if the word "heirs" did not refer to Claire Greening. There is no pretermitted heir statute available to others than the children or grandchildren of a deceased. Thus, paragraph eight could not have an effect on the testatrix's brothers, sisters, nieces or nephews. Those not mentioned in the will simply could not take. On the other hand, paragraph eight did directly affect the objector. She is the only one on whom the statute will work, and paragraph eight was included to stop the statute's effectuation.

Appellant also places great emphasis on the fact the scrivener of the will was unaware Mrs. Jones had a daughter, and thus paragraph eight could not have been inserted for the purpose of disinheriting her. That is, lack of knowledge on the scrivener's part indicated Mrs. Jones did not have her child in mind at the time she executed the will. Of course, it makes no difference whether the scrivener knew of the daughter or not—knowledge or the lack thereof on the part of the draftsman is not evidence Mrs. Jones did not have the appellant in mind when the will was drawn and executed. The will belonged to the testatrix and not her attorney, and it was her intent, and her intent alone, in which the court was interested.

Finally, appellant maintains that the person who deems

the omission of the child was intentional has the burden of proof which was not carried in the present case. Appellant is correct when she states respondent has the burden of proof under a statute such as ours. 170 A.L.R. 1387 (1947). However, using appellant's proposed reasoning respondent is put in the position of not being able to carry the burden no matter what he does. For, if the scrivener is required to know Mrs. Jones did have her daughter in mind to effectuate paragraph eight, thus making section 91-136, ineffective, and this fact is not allowed to be brought out through extrinsic evidence as to the testatrix's intent; how could the respondent, ever carry the required burden of proof? The respondent however did carry the burden of proof, as the quoted testimony indicates. Too, the scrivener is not required to know Mrs. Jones had a daughter as was pointed out above.

The second specification of error is whether the lower court was mistaken in not allowing testimony by the appellant of conversations between her and the testatrix, and allowing testimony of a conversation between the scrivener and the testatrix.

No prejudicial error in either case appears. The appellant had testified that she had not seen decedent in six years, long prior to the will in question. No foundation, no offer of proof, no showing of relevancy at all was made. Under these circumstances we do not consider any merit to error being urged at this time.

The scrivener's testimony, which has already been alluded to, should have been allowed to establish the testatrix's precise intent. In re Estate of Peterson, supra; 88 A.L.R.2d 616 (1963).

For these reasons the judgment of the lower court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES JOHN CONWAY HARRISON, DOYLE and ADAIR, concur.